86  215
58a 525

## The Chicago City Railway Company

*v.*

## George Howison *et al.*

1. DAMAGES — *on dissolution of injunction — profits to be derived from extending road too remote.* Where a horse-railway company was enjoined from extending its track to a certain point, and the injunction was dissolved, the company claimed damages from a loss of profits that might have been realized. The evidence relied on was the increase of business after the extension. It also appeared that the company had another line, parallel with the extension and near the same, and that no accounts were kept of the profits as to the extension, the fare being 5 cents for any distance. It was *held*, that no damages could be assessed for such profits, they being speculative and too remote and uncertain.

2. SAME — *distinguished from other cases.* This case is to be distinguished from cases where a business is built up or established so as to furnish a basis for estimating damages. In such cases damages are recoverable for loss of profits where the party is prevented from exercising his business, but not where the business has not been established. Damages for profits of a railway never built are not recoverable.

APPEAL from the Circuit Court of Cook County; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. HITCHCOCK & DUPEE, for the appellant.

Messrs. SHOREY & SHAFFNER, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On August 22, 1864, an ordinance was passed by the City Council of Chicago, authorizing the Chicago City Railway Company to construct its railway on Indiana avenue in that city, from Twenty-second street to the city limits, on conditions; one of which was that the railway should be constructed within fifteen months from the passage of the ordinance.

On September 12, 1871, the railway company not having constructed its railway south of Thirty-first street, the appellees, property owners on Indiana avenue, filed their bill of complaint in the circuit court of Cook county, to re-

strain the railway company from extending its track on Indiana avenue from Thirty-first street to the city limits, a distance of one mile, appellees alleging in their bill that the company was about to construct that part of the road.

A preliminary injunction was granted, and an injunction bond given by appellees. On November 5, 1875, the injunction was dissolved, and suggestions of damages under the statute were made by the railway company, as follows :

First, the costs and solicitor's fees, amounting to $720.75 ; second, the net profits which the defendant might and would have made from operating its railway from Thirty-first street to the city limits, if it had not been enjoined, viz., $24,000, or about the sum of $500 per month.

The first item in the suggestion of damages was afterward withdrawn before hearing, and the court below decreed that no damages be recovered, and dismissed the suggestion. The railway company appealed.

The question presented is, whether the kind of damages named in the second suggestion of damages are recoverable.

Appellant's counsel admit the general rule that probable, conjectural, or speculative profits can not be recovered, but insist that there are facts here established by the evidence which will enable the court to ascertain the direct and certain damages sustained by the railway company by the injunction, as follows : The line of railway had been completed on Indiana avenue, from Thirty-first street to the city limits, for some time previous to the hearing. It appeared that the condition of the track north of Thirty-first street was such (owing to a switch on Twenty-sixth street having been torn up, and which the company had been enjoined from relaying) that only sixteen cars could be run, and that by the extension of the track twenty-five cars could be run ; that twenty-five cars were put upon the line immediately upon the extension, showing, as claimed, that the company was by the extension enabled to run nine more cars ; that the condition of Indiana avenue in regard to population and travel had not changed since January 1, 1873.

It was shown that each car on that line, for three years preceding the dissolution of the injunction, earned $3.20 per day; at which rate nine cars, in three years, would have earned $31,635. After the extension the average returns from the line were increased $143 per day, while the average expenditures were increased only $49 per day.

It is contended that this testimony as to net profits is sufficiently certain to enable the court to ascertain the extent of the damages.

It appears from the evidence that the company had a parallel line of railway on State street, which, at the city limits, was three blocks distant from Indiana avenue. There is no evidence to show that any persons using the Indiana avenue line since the extension did not use this parallel line before the extension; it appearing that patrons of the Indiana avenue line formerly rode on the State street line.

It appears that the rate of fare for any distance on the Chicago City Railway is 5 cents; that the entire length of this Indiana avenue line is four miles and a half; that the cost of carrying passengers for a long distance is greater than the cost of carrying them a short distance, but no rule of measuring the difference is given; it appearing that no accounts are kept of the profits of that part of the route in question, and there is no rule for determining what they are.

It appears that the absence of the switch at Twenty-sixth street prevented the company from using from twenty to twenty-four cars a day which they would have run, at least a portion of the year, if it had not been for the absence of the switch. This absent switch was restored at the same time that the railway was extended south of Thirty-first street, and the cars were increased from sixteen to twenty-five, or one more than the company would have had, for a portion of the year, with the switch and without the extension.

Although there is the general statement that the same condition of things in regard to population and travel has

existed since January, 1873, the witness giving such testimony did afterward admit that the increase of travel by the day in 1874, as compared with 1873, was nearly 900 passengers.

There are, then, these elements of uncertainty as to the profits made in consequence of the extension : It is uncertain how much of the increase claimed may have come from the parallel line of the same company ; how much was due to general increase of business and travel ; what the increase of cost was in carrying passengers the additional distance, no accounts of profits being kept for parts of lines ; and the absence of the switch at Twenty-sixth street, for which appellees were not responsible, diminished the number of passengers that could be carried from four to eight cars for a part of the year, and the loss claimed in that respect may be as well imputable to that cause — the absence of the switch — as to the non-extension of the track.

Appellant's counsel admit that what proportion of the large increase of earnings, after the extension of the line to the city limits, was due to other parts of the line can not be determined with certainty, but say it was probably in the ratio of the old and new tracks — acknowledging to that extent the objection in regard to uncertain and probable profits.

The claim here is of damages for profits that a railway company might have made on a railway that had never been built.   We are cited to no precedent in sanction of such a claim.   Reference is made to the case of *Chapman* v. *Kirby*, 49 Ill. 211, as one where profits were inquired into.

That was the case of a lease of a portion of a planing-mill and premises and a specified quantity of steam-power. After the lessee had been in the enjoyment of the demised premises for a considerable time, the lessors wrongfully cut off the steam-power, thus stopping the machinery and business of the lessee ; for which tort he sued in case to recover for the damages he had sustained.   It was held that the losses sustained by the breaking up of the lessee's estab-

lished business was a proper element for consideration in ascertaining the amount of damages, and that, in estimating such losses, it was proper to take into consideration the profits of the business for a reasonable period next before the time when the injury was inflicted.

But the court there take the precise distinction which exists in the case at bar, saying the case was not in conflict with that of *Green* v. *Williams,* 45 Ill. 206, as in that case the lessee had not entered upon the term, had not built up or established a business, and had not suffered such a loss; that there was not in that case any basis upon which to determine whether there ever would be any profits, or upon which to estimate them, and that it was the same with *Cilley* v. *Hawkins,* 48 Ill. 308.

Both the cases last cited were of leases of premises, the term to commence at a future day, where the landlord refused to give possession, and actions for breach of contract for the leases were brought.

The first was the case of the renting of a store in Chicago for the purpose of carrying on the business of a milliner, and it was held that the plaintiff was not entitled to recover for profits that she might have made by conducting her business on the demised premises; that such damages were remote, speculative, and incapable of ascertainment. The other case was of the lease of a farm, and the court below excluded the inquiries what could have been made on the farm during the continuance of the lease, and what was the damage in not getting the farm to cultivate. It was held that there was no error in the rejection of such evidence on the question of damages; that the damages sought to be proved were speculative and conjectural; that " the inquiry should have been, What was the true worth of the term? for how much could plaintiffs in error have sold it to any one desiring to purchase? Not how much any person might imagine could have been made by its enjoyment."

The damages claimed here seem to us to fall within the objection of being conjectural, speculative, and incapable

of ascertainment, and to be identical in principle with those set up and denied in the cases of *Green* v. *Williams* and *Cilley* v. *Hawkins*. There, damages were sought to be recovered for profits which might have been realized from a demised term which had never been entered upon and enjoyed; here, for profits that might have been made on a railway that had never existed. See, also, *Olmstead* v. *Burke*, 25 Ill. 86; *City of Chicago* v. *Huenerbein*, 85 id. 594.

We are of opinion the court below rightly disallowed the claim of damages, and the decree is affirmed.

*Decree affirmed.*