[No. 11503.   Department One. — September 30, 1889.]

WILLIAM P. LAMBERT, RESPONDENT, v. J. L. HASKELL ET AL., APPELLANTS.

PLEADING — SETTING FORTH INSTRUMENT IN FULL — EXHIBITS — COLLATERAL AND PRELIMINARY MATTERS OF SUBSTANCE. — While under our system it is good pleading to set forth in full an instrument upon which the action or defense is founded, yet this does not apply to preliminary and collateral matters of substance. Such matters must be alleged, and recitals in the instrument cannot serve as such allegations.

UNDERTAKING TO CONTINUE INJUNCTION IN FORCE — CONSTRUCTION OF WORDS "IN CASE SAID INJUNCTION SHALL ISSUE" IN SAME. — If a preliminary injunction has been issued on an insufficient undertaking, the court has power, upon a motion to dissolve, to order that the injunction be dissolved unless a proper undertaking be given. And where an undertaking is given in response to such an order, the phrase "in case said injunction *shall issue*," used in the undertaking, does not of itself conclusively show that the undertaking was not upon the injunction continued in force. The circumstances may be such as to show that it was so given. Instance.

INJUNCTION — DAMAGES — PROFITS WHICH WOULD HAVE BEEN MADE — EVIDENCE OF PROFITS ACTUALLY MADE. — Where an established business is suspended by a preliminary injunction to which the party was not entitled, the profits which would have been made can be recovered. And evidence of the profits which were actually being made is admissible upon such question.

| | |
|---|---|
| 80 | 611 |
| 82 | 506 |
| 80 | 611 |
| 86 | 305 |
| 80 | 611 |
| 88 | 167 |
| 80 | 611 |
| 90 | 638 |
| 80 | 611 |
| 101 | 218 |
| 101 | 221 |
| 80 | 611 |
| 109 | 36 |
| 80 | 611 |
| 110 | 440 |
| 80 | 611 |
| d119 | 251 |
| 119 | 256 |
| 80 | 611 |
| 127 | 577 |
| 80 | 611 |
| f130 | 194 |
| 80 | 611 |
| 131 | 184 |
| 80 | 611 |
| 139 | 36 |
| 80 | 611 |
| 146 | 33 |
| 80 | 611 |
| 149 | 198 |
| 149 | 199 |

ID. — PRELIMINARY INJUNCTION — MERGER IN FINAL DECREE — SUBSE-
QUENT DAMAGES NOT RECOVERABLE — REVERSAL — COUNSEL FEES ON
APPEAL. — As a general rule, no undertaking can be required upon a
final decree; and the functions of a preliminary injunction cease when
the final decree is made; consequently damages subsequently accruing
cannot be recovered from the sureties, although the final decree be re-
versed on an appeal; but counsel fees on appeal from an order refusing
to dissolve the injunction taken before the final decree is made, are re-
coverable, if the evidence segregates the amount of such counsel fees
from those paid generally in the cause.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
refusing a new trial.

The facts are stated in the opinion.

*C. H. Parker*, and *R. Percy Wright*, for Appellants.

*Lloyd & Wood*, for Respondent.

HAYNE, C.—Action against the sureties on an under-
taking on a preliminary injunction; verdict and judg-
ment for plaintiff; defendants appeal from the judgment,
and from an order denying their motion for a new trial.
We think that the judgment and order appealed from
must be reversed. But as some of the questions will
arise upon a retrial we have examined them.

1. We think that the complaint states a cause of action.
The argument against it is, that material allegations are
omitted, and that such omission cannot be supplied by
a copy of the undertaking annexed to the complaint;
and the case of *Los Angeles* v. *Signoret*, 50 Cal. 298, is
cited. The objection goes, in effect, to the long-existing
and well-established practice of pleading by setting forth
in full the instrument upon which the action or defense
is founded. For there can be no difference between set-
ting forth such instrument in the body of the pleading
and in annexing it as an exhibit, and making it a part
of the pleading by a proper reference. In each case the
copy is part of the pleading. The only difference is in

the arrangement or sequence of the parts. And this difference is entirely unimportant upon the question whether the pleading states a cause of action. The objection, therefore, as above stated, goes to the propriety of pleading an instrument by setting it forth in full. This, however, is a recognized mode of pleading in this state. In *Stoddard* v. *Treadwell,* 26 Cal. 303, the court distinctly stated that "a contract may be declared on according to its legal effect or *in hæc verba."* And the same rule has been laid down in other cases. (*Murdock* v. *Brooks,* 38 Cal. 603; *Joseph* v. *Holt,* 37 Cal. 253; *Hallock* v. *Jaudin,* 34 Cal. 175; *Wills* v. *Kempt,* 17 Cal. 98.) In *Joseph* v. *Holt,* it was said that if there was any preference between the two modes of pleading, it was more in harmony with our system to set forth the instrument. This does not mean that the party may plead matters of mere evidence. The instrument must be one on which the action or defense is founded. And the instrument set forth must be free from defect or ambiguity. If not, the pleader must put some construction upon it by averment. (*Durkee* v. *Cota,* 74 Cal. 315.) And the practice seems to be recognized by express provisions of the Code. (Code Civ. Proc., secs. 447, 448.)

The case of *Los Angeles* v. *Signoret* is not at all in conflict with the decisions above cited. It merely establishes what seems to us to be an obvious and necessary qualification of the rule, viz., that matters of substance which are preliminary or collateral to the instrument pleaded cannot be supplied by the recitals of the instrument. This must be true. All that is accomplished by setting forth an instrument in full is to allege its existence and character. It does not involve an assertion of the truth of preliminary or collateral matters recited in the instrument. Whatever may be the effect of such recitals as evidence, they cannot serve as allegations in pleading. The facts of the case relied upon will illustrate this. The action was upon a street assessment.

The street law required certain preliminary steps to be taken to give the municipal authorities jurisdiction to make the assessment. The complaint was silent as to the taking of these steps. The only thing to show that they had been taken was the fact that they were recited in the assessment. This did not amount to an assertion by the pleading that the steps had been taken. It was at most an assertion that the officer who made the assessment had asserted that they had been taken, which was clearly insufficient.

Now, in the case before us, the complaint sufficiently alleges the existence of the preliminary facts. It alleges the pendency of the injunction suit, and the making of an order requiring an undertaking with specified conditions, viz., an undertaking "conditioned that said sureties on said undertaking would pay to said William P. Lambert, B. W. Brown *et al.*, the said parties enjoined, all damages that they might sustain by reason of said injunction, if said court should finally decide that said Alpers and Mowry were not entitled to the same, said damages not to exceed ten thousand dollars." It then alleged that an undertaking had been given in compliance with said order, and annexed said undertaking as an exhibit, making it a part of the pleading by reference. This was a sufficient showing of the terms of the contract of the sureties and "the condition upon which their liability was to arise." The "nature of the obligation" set forth was a matter of law which it was not necessary to allege.

Nor do we think that appellants are right in their contention that the complaint does not show the acts which were sought to be restrained, and that it cannot be seen from the pleading whether the injunction restrained the defendants from the commission of the acts referred to in the undertaking. The complaint first alleged that the business of the defendants in the injunction suit was the removal of dead animals, "and of trying out dead

animals, and selling the oil, bones, hides, and other products derived from them." It then alleges that an injunction was issued, which was annexed as an exhibit and referred to, "enjoining and restraining said plaintiff, Brown *et al.,* from carrying on *said business* as in said injunction particularly expressed." The injunction restrained the defendants "from maintaining your certain order-boxes mentioned in the complaint in this action, to which your attention is hereby directed, and from removing or in any manner interfering with or disposing of the carcass or carcasses of any dead horse, horses, or cattle within the limits of the city and county of San Francisco." The undertaking was given "in order to continue in force said injunction restraining said plaintiff, Brown and others, from carrying on their *said business.*" This was sufficient, at all events, as against a general demurrer.

The fulfillment of the conditions of liability and the damages sustained are sufficiently stated.

2. The appellants make several points which rest upon the assumption that it does not appear that the undertaking in suit was given upon the preliminary injunction by which the parties were restrained, and that it appears that the undertaking was not so given. The facts out of which these objections grow are as follows: Shortly after the action was commenced, a preliminary injunction was issued upon an undertaking in the sum of two thousand dollars. Afterward the court made an order that the injunction should be dissolved unless the defendants should, within ten days, give another undertaking, in the sum of ten thousand dollars, with specified conditions. Such an undertaking was given within the required time, and is the one in suit,— the one previously given having been released. It recited the commencement of the suit, and proceeded as follows:—

"Now, therefore, we, the undersigned, J. L. Haskell

and C. Westphal, in consideration of the premises and of the issuing of said injunction, do jointly and severally undertake, in the sum of ten thousand dollars, and promise to the effect that in case said injunction *shall issue,* the said plaintiffs will pay to the said parties enjoined such damages, not exceeding the sum of ten thousand dollars, as such parties may sustain by reason of said injunction, if the said district court finally decide that the said plaintiffs were not entitled thereto."

It is argued that the phrase "in case said injunction *shall issue*" shows that some injunction to issue in the future was intended, and that it must be held that the undertaking was upon the final injunction to be issued in case judgment should be ordered for the plaintiffs upon the trial. But we do not think so.

If the language had been "in case said injunction *shall be continued in force*" instead of "shall issue," there could have been no doubt. The question is, therefore, whether the words "shall issue" can be construed to mean "shall be continued in force." Now, we think that there might be cases in which the circumstances would show that the two phrases were used as equivalent to each other. There is no provision of statute expressly authorizing the requirement of an undertaking as a condition for "continuing" an injunction. The only provision is that an undertaking may be required "on granting" an injunction. But it cannot be doubted that the court has power, where it appears that the injunction was issued on an insufficient undertaking, to order (as it did in the case in question) that the injunction should be dissolved unless a sufficient undertaking should be given,— or, in other words, should be continued in force only on condition that a sufficient undertaking should be given. Such a proceeding would be sustained upon the theory that the words "on granting" were broad enough to mean "on continuing in force." For the transaction would be, in substance and effect, though not in form,

the "granting" of an injunction. And the same would
be true if the language had been "on issuing" instead of
"on granting" the injunction. We think, therefore,
that the two phrases mentioned may be held to be in
some cases equivalent in meaning, if the circumstances
show that such was the intention. And the circum-
stances here clearly show that such was the intention;
for *it is admitted by the pleadings* that the undertaking in
suit was given to continue in force an injunction.

The complaint first alleged the granting of the in-
junction and the making of the order requiring a
further undertaking, and then that in compliance with
such order, "and in order to *continue in force* said in-
junction," the undertaking in suit was given. The
answers deny that the defendants caused the undertak-
ing to be filed, and aver that the plaintiffs in the injunc-
tion suit caused it to be filed. But if they executed the
undertaking for the purpose mentioned, it is unimpor-
tant whether they or their principal caused it to be
filed. This denial, therefore, is immaterial. The de-
fendants further aver that they had no knowledge of
"the order and character" of the prior proceedings in
the suit. But the undertaking recites the pendency of
the suit. And this recital is conclusive of their knowl-
edge of the suit. (*Pierce* v. *Whiting*, 63 Cal. 540.) And
having such knowledge, they are bound to take notice
of the "order and character" of the proceedings therein.
It is therefore admitted by the pleadings that the under-
taking was given to continue in force the injunction
previously issued. In the face of this admission, can
the defendants maintain that the undertaking was not
given to continue in force said injunction?

There are other considerations which lead to the same
result. It is perfectly true that a surety cannot be held
beyond the express terms of his contract. But the
meaning of the terms used is a matter of interpretation.
And "in interpreting the terms of a contract of surety-

ship the same rules are to be observed as in the case of other contracts." (Civ. Code, sec. 2837.) One of these rules is, that a contract must be interpreted so as to make it operative and capable of being carried into effect, if it can be done without violating the intention of the parties. (Civ. Code, sec. 1643.) But to give the undertaking the construction contended for by the appellants would be to make it inoperative and of no effect. They say that it means that it was given upon "the perpetual injunction to be obtained by the judgment of the court as the result of the action." And the counsel are driven to this position. For unless it means either the continued injunction or the final injunction, it does not mean anything. But it is obvious that it cannot mean the final injunction. For, aside from the absurdity of requiring an undertaking a long time prior to the judgment upon which it was to be given, and the uncertainty as to which party would prevail upon the trial, it is manifest, for reasons stated below, that no undertaking could be required upon the final injunction. So that to adopt the construction contended for would be to make the order requiring an undertaking ridiculous and the undertaking itself futile. Such a construction will not be adopted if a reasonable one be fairly open, which we think that we have shown is the case.

3. It is objected that the respondent was allowed to recover damages for the profits which he would have made had he not been prevented by the injunction from carrying on his business. We think that this was proper. It must be true that where a party is wrongfully prevented by injunction from carrying on a profitable and established business he can recover damages therefor. And if the profits which he would have made are not to be allowed, what damages is he to recover? Would it be adequate compensation to reimburse him merely for his expenditures, and for the losses which he might sustain from being prevented from fulfilling existing

engagements, and the depreciation of his stock in trade? If this were true, there would be a very convenient way of getting rid of a business rival. A business might be destroyed by a preliminary injunction before the truth of the allegations upon which it was obtained could be inquired into. The best considered cases agree that where an established business is wrongfully injured or destroyed, the owner of the business can recover the damages sustained thereby, and that upon this question evidence of the profits which he was actually making is admissible. (*Terre Haute* v. *Hudnut,* 120 Ind. 550 et seq.; *Allison* v. *Chandler,* 11 Mich. 558 et seq.; *Chapman* v. *Kirby,* 49 Ill. 219; *Simmons* v. *Brown,* 5 R. I. 299; 73 Am. Dec. 66; *Gibson* v. *Fisher,* 68 Iowa, 30; *Goebel* v. *Hough,* 26 Minn. 256; *Shafer* v. *Wilson,* 44 Md. 268.) The damages must be proximate, and not too speculative and remote. Thus it has been held that the profits which a party claims that he would have made from a contemplated extension of his business are too remote. (*Chicago Railway* v. *Howison,* 86 Ill. 215.) But we think that the facts of the present case bring it within the rule above stated, although the business had only been established a short while.

4. We think, however, that the court erred in allowing the plaintiff to recover damages accruing after the final decree, made in February, 1881. By it the court decreed that "the temporary injunction heretofore granted be made perpetual, and that said defendant be enjoined for the space of twenty years," etc. An appeal was taken from this decree, and it was reversed. The *remittitur* was filed in the lower court on July 5, 1882. Shortly afterward the suit was dismissed upon motion.

The trial court in the present case evidently proceeded upon the theory that the plaintiff herein was entitled to recover damages for the whole period from the giving of the undertaking down to the dismissal of the suit,

in 1882. It overruled an objection to evidence raising this question, to which ruling an exception was taken, and it is assigned as error. And subsequently (though not immediately) evidence was admitted in accordance with the ruling. The jury were distinctly instructed that the recovery, if any, should be for the whole period up to July 4, 1882. And it is evident from the record that the jury must have acted on this theory. The exceptions to the charge are probably too general. But we think that the record fairly presents the question in at least one way, if not in several. And the respondent claims to be entitled to damages for the whole period, and does not raise any question as to the sufficiency of the record. The position of the appellants is, that all that could be recovered in any view was "such damages as were sustained by the parties enjoined by reason of the loss of profits of their business from the time the undertaking was given until the injunction was made perpetual by the court, i. e., between January 27, 1880, and February, 5, 1881." And we think that this position must be sustained, both as to the loss of profits and as to counsel fees.

The condition of liability expressed in the undertaking is, "if the said district court finally decide that the said plaintiffs were not entitled," etc. This seems to us to point to the final decree to be made after trial of the case. But even if it were otherwise,— even if the undertaking had expressly provided for a subsequent liability,— if such provision be outside of what is required by the statute, it would be void. For it is settled that a statutory undertaking beyond what is required by the statute is to that extent without consideration and inoperative. (*Powers* v. *Crane*, 67 Cal. 65; *People* v. *Cabannes*, 20 Cal. 528.) The question is, therefore, what is the undertaking required by statute, and what liability does it impose?

It seems plain that the undertaking provided for by

the Code of Civil Procedure is upon the preliminary injunction. No other injunction is provided for therein. And ordinarily, no undertaking could be required on the final decree. Possibly there may be exceptional cases in which the relief sought is of such a character as to make it proper for the court, under its general powers in deciding a case in equity, to require an undertaking from the plaintiff as a condition of relief. But ordinarily, no undertaking could be required on the final decree. None could have been required upon the final decree in this case, and none was required. Hence, as above stated, it is plain that the undertaking provided for is upon the preliminary injunction only. Being upon the preliminary injunction, it can last only as long as such injunction continues, and expires with it. How long, then, does the preliminary injunction last? We think that the whole theory of a preliminary injunction is that it is to preserve the rights of the party until the truth of the charge can be regularly investigated. It is called by the code a "provisional remedy." When the truth of the charge has been investigated, and a final decree made, there is no longer any necessity for a preliminary injunction. It has served its purpose, and its functions cease. If its functions do not cease, then, of course, it remains in force. But the final decree is also in force. The injunction awarded by a final decree is not suspended by an appeal. (*Heinlen* v. *Cross*, 63 Cal. 44.) Hence, if the preliminary injunction does not cease, there would be the anomaly of two injunctions in the same case, each restraining the same act, and each valid. But overlooking this anomaly, how could it be said in such a case that the party is injured by the preliminary injunction? If it were out of the way he would still be restrained by the final injunction. He would be no better off if the preliminary injunction were annihilated. What difference, then, does it make to him? How can he be said to suffer damages from it? The

practical effect of giving the party a remedy upon the undertaking after the final decree is to require a bond upon the final decree, which is not authorized by law.

The proposition we have endeavored to state was recently expressed by the court of appeals of New York, in reasoning to a different point, as follows: "An injunction by order is a provisional remedy, and temporary in its character. It assumes a pending litigation in which all questions are to be settled by a judgment, and operates only until the judgment is rendered. If by that a permanent injunction is granted, the temporary one is of course ended, and equally so if a permanent one is denied." (*Jackson* v. *Bunnell*, 113 N. Y. 220.)

The same doctrine was laid down, and the very point which is involved here decided, in *Webber* v. *Wilcox*, 45 Cal. 302. The material facts of that case were identical with the material facts of the case before us. A preliminary injunction was granted, and after trial, a final injunction was decreed. The final decree was appealed from, and was reversed, and the suit was thereupon dismissed. In an action upon the undertaking, it was held that there could be no recovery against the sureties for costs or counsel fees expended after the rendition of the final decree in the court below. And the supreme court said: "When the decree for a perpetual injunction was rendered, the order for a preliminary injunction was merged, or ceased to have any further effect, and thereafter the case stood in the same condition, in respect to damages, as it would have done had no preliminary order been made." This case holds that the function of a preliminary injunction ceases upon the rendition of the final decree. And upon the same principle (differently applied), it has been held that the functions of a restraining order, pending the issuance of a preliminary injunction, cease upon the issuance of the latter. (*Cohen* v. *Gray*, 70 Cal. 85.) It results that the plaintiff cannot hold the sureties in damages, either for loss of profits or

counsel fees accruing after the final decree in the court below.

The case of *Webber* v. *Wilcox* was not overruled by *Porter* v. *Hopkins*, 63 Cal. 53, as contended for the respondent. It is true that it was there held that counsel fees in the supreme court could be recovered from the sureties on the preliminary injunction. But this was held with reference to counsel fees on appeal *from the order refusing to dissolve the injunction,* and not with reference to counsel fees on appeal from the final decree. It is obvious that the party may move to dissolve the injunction without waiting until the trial of the cause, and may at once appeal from the order denying his motion. This appeal may possibly be disposed of before the final decree is made. In such case the preliminary injunction would not be merged in the final decree, for the simple reason that there would be no final decree. And the counsel fees on appeal from the order would be incurred in procuring a dissolution of the injunction, and would, therefore, be properly allowed as damages. Even if a final decree be rendered after the appeal from the order, and before such appeal be disposed of, it would seem reasonable that, inasmuch as it was taken before the decree, the party would be entitled to have it disposed of without reference to facts subsequently occurring in a different line of procedure. Now, we have examined the report of the case of *Porter* v. *Hopkins* in connection with the record on which the decision was rendered (see vol. 305, Supreme Court Records), and we think that the most that can be claimed for it is, that it decides, first, that the party enjoined is entitled to counsel fees upon appeal from the order refusing to dissolve the preliminary injunction, where such order is made and appealed from before the final decree is made; and second, that even when the final decree is made after such appeal, but before it is disposed of, the party is entitled to have his appeal disposed of, and may in a

proper case recover his counsel fees thereon. We do not desire to be understood as expressing a positive opinion upon the second proposition, or as asserting that it was decided in the case. We merely say that the two propositions are the most that any one could claim to have been decided by the case. Neither of the propositions is in conflict with the doctrine of *Webber* v. *Wilcox.*

In the present case it does not appear that any appeal was taken except from the final decree itself. And as has been stated, the plaintiff, under these circumstances, cannot recover either for loss of profits or for counsel fees after the making of this decree. The cases of *Clark* v. *Clayton*, 61 Cal. 634, and *Dougherty* v. *Dore*, 63 Cal. 170, are not in conflict with this conclusion.

It is unnecessary to consider whether the reversal of a final decree would revive a preliminary injunction previously granted. It is probable that it would. It is probable that the preliminary injunction in such case would stand " in the same attitude in all respects as before the former trial." (See *Hess* v. *Winder*, 34 Cal. 270.) But that is a question which is not presented by the record here.

Inasmuch as the case must be reversed for the above reasons, there are two observations which we think should be made with reference to a retrial. In the first place, the liability of the sureties commences with the giving of the undertaking. They are not liable for counsel fees or loss of profits previously expended or incurred, although evidence of the previous condition of the business is admissible for the purpose of showing its extent and character. In the second place, the counsel fees for which the sureties may be held are not those expended for the defense of the suit, but only those which have been expended solely or principally in procuring a dissolution of the injunction. (*Newton* v. *Russell*, 87 N. Y. 531; *Bustamente* v. *Stewart*, 55 Cal. 115.) And the

evidence must show a case within the rule. It is not sufficient to show the value of service rendered in the case generally. (*Mitchell* v. *Hawley*, 79 Cal. 301.)

We advise that the judgment and order appealed from be reversed, and the cause remanded for a new trial.

Vanclief, C., and Belcher, C. C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.