[Civ. No. 6605. Second Appellate District, Division One.—July 10, 1931.]

SAM YELLEN, Appellant, v. THE FIDELITY AND CASUALTY COMPANY OF NEW YORK (a Corporation), Respondent.

A. Lewis Silk and Nathaniel Halpern for Appellant.

Jennings & Belcher for Respondent.

BISHOP, J., *pro tem.*—The plaintiff, believing that the judgment in his favor was for an inadequate sum, appealed, presenting as the record on appeal the judgment-roll alone. From the findings of fact we learn that the plaintiff was the holder of a note executed by J. S. and Della Jones in the amount of $1385. A trust deed secured this note, the trust deed being, by its terms, subject to a prior mortgage, which secured an indebtedness of $2,500. The Joneses brought an action to have the note held by plaintiff canceled and to have the property relieved of the threat of the trust deed. While this action was pending the plaintiff directed that the prop-

erty covered by the trust deed be- sold under its provisions, as the Joneses were delinquent in their payments. This move was countered by another suit on behalf of the Joneses, in which they secured a preliminary injunction prohibiting the sale under the trust deed, which was already advertised, the sale being suspended until the prior suit to cancel the note and trust deed could be decided. As a condition to the granting of this injunction the court required an undertaking in the sum of $1500. It is on this undertaking, executed by the defendant, that this action is based. In due time the action to set aside the note and trust deed was determined adversely to the Joneses, and a motion. to dissolve the injunction, made by the plaintiff in this action, met with success. This suit to recover the damages suffered by the injunction followed.

Damages of two kinds were sought by the plaintiff. First, he asked for and obtained judgment for the attorney fees required to obtain the order dissolving the injunction. No question is before us touching this part of the judgment. In addition, he claimed some $1600, lost, he argued, because the property which secured his indebtedness depreciated in value while the prior encumbrance appreciated in amount, during the blight of the injunction, with the result that when sold the property failed, by the amount sought as damages, to realize for plaintiff the full debt due him. To this the trial court made answer by a finding that the plaintiff had not yet pursued the Joneses with a deficiency judgment. This, the defendant argues to us, is a good and sufficient answer. It urges, furthermore, that in executing the undertaking sued upon it contracted no liability whatever. We are of the opinion that a liability was created and that the plaintiff is entitled to a greater judgment.

■ We have spoken of the issuance of a "preliminary injunction". This term we have employed in spite of the fact that the findings, which follow the pleadings in this regard, call it a "restraining order", and the undertaking terms it a "temporary restraining order". The nomenclature used does not determine its character (*Neumann* v. *Moretti*, (1905) 146 Cal. 31 [79 Pac. 512] ; *Maier* v. *Luce*, (1923) 61 Cal. App. 552 [215 Pac. 399]), but its character may be of importance when we come to consider the defendant's claim that no liability was contracted, ■ for the law does

not require an undertaking upon the issuance of a temporary restraining order (*Biasca* v. *Superior Court,* (1924) 194 Cal. 366 [288 Pac. 861]), but does upon the granting of a preliminary injunction. (Sec. 529, Code Civ. Proc.; *Neumann* v. *Moretti, supra; Maier* v. *Luce, supra.*) The order under consideration was made some six weeks after the institution of the action, and its restraining influence was by its terms to continue until the determination of the suit to cancel the note and trust deed. When that action was determined the order was dissolved. Plainly this was neither a temporary restraining order nor a permanent injunction, but a preliminary injunction (*Neumann* v. *Moretti, supra*), and, as we have noted, an undertaking was required by law and by the court's order. The surety knew of the pendency of the action, as appears from the undertaking, so was bound to know the nature of the order made. (*Lambert* v. *Haskell,* (1889) 80 Cal. 611 [22 Pac. 327].)

The undertaking given was entitled in the injunction action and read, in part, in these words: "Whereas, the above-named plaintiffs . . . is about to apply for a temporary restraining order in said action, . . . Now, therefore, the Fidelity and Casualty Company of New York . . . in consideration of the premises and of the issuing of said temporary restraining order undertakes in the sum of fifteen hundred and no/100 ($1500.00) dollars and promises to the effect that in case said temporary restraining order shall issue, *the said plaintiffs will pay* to the said parties so enjoined such damages, not exceeding the sum of fifteen hundred and no/100 dollars as such parties may sustain by reason of said temporary restraining order if the said superior court finally decide that the said plaintiffs were not entitled thereto." The emphasis in the quotation is that placed by the defendant. The promise and undertaking is that the plaintiff will pay, the defendant points out, not that it will, and it, therefore, is under no legal obligation to pay. Its inspiration for this defense is *San Luis Obispo* v. *Ryal,* (1917) 175 Cal. 34 [165 Pac. 1], where our Supreme Court found insufficient a bond, given pursuant to sections 1273, 1279 and 1292 of the Penal Code, wherein the sureties undertook that the defendant, not they, would pay. In these sections, aided, doubtless, by the reference to article II, which prescribes the form of bail bonds, our Supreme

Court found that "one of the conditions provided by the code to be inserted in such a bond . . . is that in the event that the defendant . . . fails to do or perform any of the things provided therein . . . the sureties will pay . . . a sum particularly specified . . . " It was because this requirement of the Penal Code (sec. 1278) was not complied with that the bond was found to be insufficient. No such condition is required by the terms of section 529 of the Code of Civil Procedure. The requirement there expressed is: "On granting an injunction the court or judge must require . . . a written undertaking on the part of the applicant, with sufficient sureties, to the effect that he will pay to the party enjoined such damages, not exceeding an amount to be specified, as such party may sustain by reason of the injunction . . . " This section and similar sections requiring an undertaking that the applicant or appellant or someone other than the surety will pay, have been satisfied by instruments, such as that sued on here, declaring that the surety undertakes that the applicant or other person will pay. Language is but the vehicle by which an idea is conveyed, and in the following cases undertakings worded as ours is worded have been held to so convey the idea that the surety had contracted a liability that judgment went against him. (*Curtis* v. *Richards,* (1858) 9 Cal. 34; *Tissot* v. *Darling,* (1858) 9 Cal. 278; *Murdock* v. *Brooks,* (1869) 38 Cal. 596; *Lambert* v. *Haskell,* (1889) 80 Cal. 611 [22 Pac. 327]; *Rice* v. *Cook,* (1891) 92 Cal. 144 [28 Pac. 219]; *Asevado* v. *Orr,* (1893) 100 Cal. 293 [34 Pac. 777]; *Moore* v. *Maryland Casualty Co.,* (1929) 100 Cal. App. 658 [280 Pac. 1008] [hearing in Supreme Court denied].) We are of the opinion, therefore, that the defendant in this case incurred a legal obligation.

Is it necessary that the plaintiff exhaust his remedies against the makers of the note before he can recover on the undertaking? This is the remaining question of importance in this action. There is no clear answer given in any case decided by an appellate court of this state so far as counsel's research and our search has revealed. We have reached the conclusion, however, that in so far as the delay caused by the injunction has reduced plaintiff's security below its power to satisfy, he has an immediate damage which the surety has undertaken to make good, and that the plaintiff

does not have to secure a deficiency judgment with execution returned unsatisfied before he can show that he has suffered damage and recover its amount.

 We have come to this conclusion, first because we are persuaded that injury to security which so affects it as to make it in whole or in part inadequate gives the creditor an immediate action for damages without first determining whether or not the debtor is insolvent. Oddly, the leading case is one where it appeared that the debtor was insolvent. This case is *Van Pelt* v. *McGraw*, (1850) 4 N. Y. 110. Others, where the insolvency of the debtor was not shown, but where tacitly or avowedly, the court concluded that this made no difference, but that he whose security had been destroyed was damaged and could sue, are: *Jackson* v. *Turrell*, (1877) 39 N. J. L. 329; *Chouteau* v. *Boughton*, (1890) 100 Mo. 406 [13 S. W. 877]; *Stevens* v. *Smathers*, (1899) 124 N. C. 571 [32 S. E. 959]; *Arnold* v. *Broad*, (1900) 15 Colo. App. 389 [62 Pac. 577]; *Jackson* v. *Brandon Realty Co.*, (1906) 100 N. Y. Supp. 1005. In *Jackson* v. *Turrell, supra,* the court said: ''It certainly is not just, and cannot be lawful, to leave a mortgagee without redress for the destruction of that substantial security upon the strength of which he loaned his money, because he is unable to show the present insufficiency of that wavering staff, the solvency of his debtor, upon which he never expected to rely.'' The value of thought thus expressed is not destroyed by the subsequent conclusion of the court that insolvency had been shown.

An early case in this state can fairly·be interpreted as supporting this principle. In *Robinson* v. *Russell*, (1864) 24 Cal. 467, an injunction was sought to prevent the dissipation of certain security. The injunction was denied because irreparable injury was not shown, in that it did not appear that the defendants (who were not the debtors) were insolvent, and therefore an action for damages would be adequate. With reference to the right of action the court said: ''There can be no doubt but that an action can be maintained by the mortgagee for injuries of the character set forth in the complaint in this case, when it appears that by the facts complained of the mortgage security is impaired . . . *Van Pelt* v. *McGraw*.'' If a mortgagee has an action against one whose tort impaired the security, without being

required first to take recourse against other property of the debtor, we believe one who was kept from a full use of his security because of an injunction, can recover without first following what may prove to be a will-o'-the-wisp, the debtor's ability to pay.

Directly to the point, counsel have cited no case and we have found none, holding that the surety is not to be held until all efforts to have the original debtor meet his obligations prove fruitless. There are, however, a number of cases holding the contrary: *Kennedy's Administratrix* v. *Hammond & Hall,* (1852) 16 Mo. 341; *Hunt* v. *Burton,* (1856) 18 Ark. 188; *Dangel* v. *Levy,* (1878) 1 Idaho, 722. To these authorities there should be added those where recovery was allowed without insolvency being shown or a deficiency judgment first found futile, but where the propriety of the order of procedure was assumed and not discussed. (*Rubon* v. *Stephan,* (1852) 25 Miss. 253; *Gibson* v. *Reed,* (1898) 54 Neb. 309 [75 N. W. 1085]; *Stull* v. *Beddeo,* (1907) 78 Neb. 119 [14 L. R. A. (N. S.) 507, 112 N. W. 315]; *Kitsap County Bank* v. *United States F. & G. Co.,* (1916) 90 Wash. 12 [155 Pac. 411]; *Fidelity & Deposit Co.* v. *West Blocton Sav. Bank,* (1927) 216 Ala. 465 [113 South. 489]; *Gruber* v. *Eubanks,* (1930) 199 N. C. 335 [154 S. E. 318].) In the case last cited the creditor had failed to avail himself of an opportunity in the injunction action to obtain judgment for the unpaid balance due on his notes. On the question of damages resulting from the injunction the court said: ''The only interest which the creditor has in the property is its preservation as security for his debt, undiminished in value. It is this interest only which the debtor, who procures an order restraining the creditor from enforcing his security by the sale of the property, is required to protect by a bond or undertaking. . . . If the property depreciates in value during the time the injunction is in force, and the creditor for that reason fails to collect his ∈debt, interest and costs, the amount of such depreciation is ordinarily the measure of his damages. . . . The creditor is entitled to the same security at the date of the dissolution of the injunction that he had at the date of its issuance—no more, and no less.'' We conclude, therefore, that this action was not brought prematurely, but that the damage has accrued for which the bond was

given and that plaintiff is entitled to have the damages fixed without first securing a deficiency judgment.

■ There is no basis in the findings as they now appear by which the amount of damages can be determined. Following the language of the complaint, the findings declare that at the time of the injunction the property which secured the trust deed and mortgage "was worth and was of the reasonable value of $4200, or more". When the injunction was dissolved "said property was of the reasonable value and sold to the highest bidder . . . (for) the sum of $3200". If plaintiff suffered damage due to depreciation it would be measured by the difference between what he received and what he would have received at the sale which was enjoined. We do not have this latter, essential figure.

■ By "value" the first finding must be understood as meaning "market value" (*Dean* v. *Hawes*, (1916) 29 Cal. App. 689, 693 [157 Pac. 558]). By market value "is undoubtedly meant, not what the owner could realize at a forced sale, but the price he could obtain after reasonable and ample time, such as would ordinarily be taken by an owner to make sale of like property". (*San Diego Land etc. Co.* v. *Neale*, (1888) 78 Cal. 63, 68 [3 L. R. A. 83, 20 Pac. 372, 374], and *Santa Ana* v. *Harlin*, (1893) 99 Cal. 538, 542 [34 Pac. 224].) The sale which was enjoined was a forced sale and while it might, it would probably not, have resulted in producing $4,200. At any rate, a finding that the property was worth that is not a sufficient foundation on which to erect a judgment. We cannot, therefore, direct a judgment to be entered; but must leave its amount to be determined on a retrial.

The judgment is reversed.

Houser, Acting P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 24, 1931.