[Civ. No. 13623.   Second Dist., Div. Three.   Jan. 29, 1943.]

GIZELLA ADAMS, Respondent, v. NATIONAL AUTOMO-BILE INSURANCE CO. (a Corporation), Appellant.

C. W. Bowers for Appellant.

Walter E. Egerman for Respondent.

SHINN, J.—The complaint herein contained three causes of action. The first was for the recovery of damages from National Automobile Insurance Co. upon two undertakings executed by that defendant in connection with a restraining order and a temporary injunction in an action in which plaintiff herein was defendant; the second was for damages against defendant Goldstein for malicious prosecution of the suit for injunction and for malicious use of the injunctive orders; the third was for the rescission of a lease of real property in which one Feder was lessor and plaintiff herein was lessee, and for the recovery of rent paid. Findings and judgment were in favor of plaintiff upon the first and second causes of action and in favor of defendant Feder upon the third cause of action. Defendant National Automobile Insurance Co. has appealed from the judgment, defendant Goldstein has not appealed and plaintiff has not appealed from the judgment as to the third cause of action in favor of defendant Feder.

Defendant Goldstein operated a beauty shop in premises which she rented from Feder. Plaintiff, who was operating a beauty shop, leased another storeroom from Feder close by the one occupied by Goldstein. When plaintiff had almost completed the fitting up of her new shop and was installing the equipment from her old one, she and Feder were made defendants in a suit for injunction brought by Goldstein, the contention of the latter being, as it is stated by counsel, that Feder had made an agreement with defendant Goldstein not

to lease the premises in question for use as a beauty shop. Upon the filing of the complaint a restraining order was issued and served upon plaintiff herein, who thereupon discontinued the fitting up of her new shop in obedience to the restraining order; later a temporary injunction was issued and served upon plaintiff. National Automobile Insurance Co. executed a $500 bond in connection with the restraining order and a $1,000 bond in connection with the temporary injunction. After plaintiff herein had been under the restraint of these orders for a month she and defendant Goldstein entered into an agreement, hereinafter to be discussed, and thereupon defendant Goldstein caused her injunction suit to be dismissed by written request of her counsel filed with the clerk. Plaintiff became discouraged, did not open up the new shop and disposed of the fixtures and equipment of her business at a very considerable loss.

The complaint in the present action alleged the pertinent facts with relation to the execution of the two bonds by appellant. In the second cause of action it was alleged that the legal proceedings prosecuted by defendant Goldstein were without probable cause and actuated by malice. Damages were sought in the sum of $4,150, alleged to have been sustained by plaintiff as follows: $1,000 as the expense incurred in fitting up the new shop and preparing to move the business; $3,000 for the loss of plaintiff's business, and $150 alleged to have been paid by plaintiff to her attorney in connection with the restraining order and temporary injunction. The court found that plaintiff had sustained damage in the sum of $1,107, including $150 paid by plaintiff as attorney's fees. There was a finding that this damage was sustained by plaintiff by reason of the restraining order and the temporary injunction and a separate finding that damage in the same amount was sustained by plaintiff by reason of the malicious acts of plaintiff in the prosecution of the injunction suit and the procurement of the injunctive orders therein. Judgment was entered jointly against National Automobile Insurance Co. and Goldstein for said sum of $1,107.

Appellant demurred to the complaint upon the ground, among others, that there was a misjoinder of causes of action and also a misjoinder of parties defendant; the demurrer was overruled. The following contentions are urged for a reversal of the judgment: (1) there was a misjoinder of causes of action; (2) there was a misjoinder of parties de-

fendant; (3) the judgment is erroneous in that it is a joint judgment against National Automobile Insurance Co. as surety on the bonds and against defendant Goldstein for malicious prosecution; (4) that the agreement between plaintiff herein and defendant Goldstein pursuant to which the injunction suit was dismissed by the latter was a waiver by plaintiff of any right to recover on either of the bonds; (5) that the evidence was insufficient to sustain the finding of damage, and (6) that the undertaking given in connection with the restraining order was without consideration and void.

Of the enumerated contentions we find the first five to be without merit; as to the sixth contention we find the judgment to be subject to modification.

■ Points 1 and 2 may be considered together. The demurrer on the ground of misjoinder did not specify the particulars in which it was claimed that there was either a misjoinder of causes of action or parties. Being in general language it was not a good plea of misjoinder and the court properly overruled the demurrer upon that ground. (*Kreling* v. *Kreling*, (1897) 118 Cal. 413, 420 [50 P. 546]; *Gardner* v. *Samuels*, (1897) 116 Cal. 84, 88 [47 P. 935, 58 Am.St.Rep. 135]; *O'Callaghan* v. *Bode*, (1890) 84 Cal. 489, 495 [24 P. 269].)

■ It is true, as contended under the third point, that while a joint judgment was entered on the two causes of action, defendant Goldstein was not liable with appellant on the first cause of action, since she did not sign the undertaking, and appellant was not liable with Goldstein under the second cause of action for malicious prosecution. But these facts do not affect the validity of the judgment. Only actual damages were allowed plaintiff; in fact she sought no punitive damages. It would seem clear that neither of two defendants is prejudiced by a joint judgment against them where one has incurred liability for damages for his tort and the other by reason of his agreement of indemnity against the same damage. If, therefore, appellant was properly held liable upon either or both of the two undertakings for damages sustained by plaintiff by reason of the injunctive orders no possible prejudice could result to it by reason of the fact that defendant Goldstein was held liable in the same amount on the basis of malicious prosecution. Appellant and Goldstein would be in substantially their present positions if separate judgments in the same amount had been rendered against them in separate actions. ■ Where a case has been

fairly tried and the judgment correctly determines the rights of the parties, irregularities of procedure will not justify a reversal. (*Conaway* v. *Toogood*, (1916) 172 Cal. 706, 713 [158 P. 200]; *Karlik* v. *Peters*, (1930) 106 Cal.App. 126, 131-132 [288 P. 863], and cases there cited.)

The alleged waiver by plaintiff in connection with the dismissal of the action is predicated upon a written agreement signed by plaintiff and defendant Goldstein reading as follows: "This Covenant, made this 21st day of March, 1941, by and between Gizella Adams and Dorothy Ann Goldstein, Whereas, the said Dorothy Ann Goldstein is now about to dismiss with prejudice that certain Los Angeles Superior Court action number 461-279, and Whereas, upon said dismissal the said Gizella Adams may open and maintain a beauty shop in the premises located at 7775 Beverly Boulevard, in direct competition with the beauty shop now owned and operated by Dorothy Ann Goldstein, located at 308 N. Ogden Drive, Now therefore, the parties agree that they will not lower or cut prices listed as follows: [Here follows schedule of prices to be charged.] This agreement to not lower or cut the prices to extend for a period of six months from the date of execution hereof. This covenant shall not be construed as a waiver of the right of Gizella Adams to recover damages from any party to the said law suit known as Los Angeles Superior Court No. 461-279. This covenant shall be effectual upon execution to begin with the date of the filing of the dismissal provided that said dismissal is filed not later than seven days from date of execution." The agreement was prepared by the attorney for defendant Goldstein and apparently at the latter's suggestion. The question of waiver will be answered when it is determined which of two rules of law should be applied to the facts of the case. The first rule, which is the one the trial court applied, is that the voluntary dismissal by a plaintiff of an action for injunction is to be given the same effect in fixing the liability of a surety as follows a final determination by the court that the plaintiff was not entitled to the injunction. (*Moore* v. *Maryland Casualty Co.*, (1929) 100 Cal.App. 658 [280 P. 1008].) The other rule is that where the dismissal results from a mutual and voluntary agreement of the parties it does not have the same effect as a determination by the court that the injunction was improperly issued but will be construed as a waiver by the defendant in the injunction suit of the right

to proceed upon the bond. (*Wilshire Mortgage Corp.* v. *O. A. Graybeal Co.*, (1940) 41 Cal.App.2d 1, 7 [105 P.2d 996]; and cases there cited.) The question is whether the trial court erred in ruling that the dismissal of the injunction suit was the voluntary act of Goldstein and not the result of an agreement between the parties for the dismissal. The court heard the testimony of the parties with reference to the circumstances under which the agreement was prepared and executed. It appeared that the landlord, Feder, paid defendant Goldstein some $380 as a consideration for the dismissal. Plaintiff herein had nothing to do with these negotiations or the payment of the money. The agreement itself recited that Goldstein was about to dismiss the injunction action, which of course she had the right to do without the consent of plaintiff herein, and we think it was entirely reasonable for the court to consider that the dismissal resulted from the agreement between Goldstein and Feder rather than from any agreement between Goldstein and plaintiff. We certainly could not say that the dismissal would not have been entered had plaintiff not consented thereto. Upon the contrary, the trial court might reasonably have inferred that it had been agreed upon between Goldstein and Feder independently of any proposed consent by plaintiff to the dismissal and as a transaction entirely apart from the arrangement with plaintiff of a schedule of charges for beauty shop services. The provision in the agreement that it was not to be deemed a waiver by plaintiff of her right ''to recover damages from any party to the said law suit known as Los Angeles Superior Court no 461-279'' lends support to the construction given the agreement by the trial court. Such an attempted reservation might not have been effectual to preserve plaintiff's right to sue on the bonds if she had in fact procured or given her consent to the dismissal as one of the terms of an agreement with defendant Goldstein, but in a negative way the provision does indicate that plaintiff, while agreeing to the schedule of prices, was still insisting that she had been wrongfully restrained from carrying on her business and that she had no intention to waive her rights in that respect. If it was a fact, and in support of the implied findings of the court we must assume it to be a fact, that plaintiff's position in the matter was entirely passive and that her inaction in no degree influenced defendant Goldstein's

action in dismissing the suit, the dismissal in legal effect was the sole and voluntary act of defendant Goldstein and the agreement to maintain prices was to all intents and purposes the only agreement between the parties. █ It is well settled that an appellate court will not disturb the construction placed upon an agreement by the trial court under such circumstances. (*Neff* v. *Mutual Life Ins. Co.*, (1941) 48 Cal. App.2d 110, 112 [119 P.2d 404], and cases there cited.) There was therefore sufficient support for the court's implied finding that there had been no waiver of plaintiff's right to sue on the bonds.

█ There was also sufficient evidence to support the court's finding of damage in the amount of $1,107. Plaintiff's business was closed from the 20th day of February to the 21st day of March, 1941. During that time her assistants accepted employment elsewhere and she was unable to serve her customers, some 75 per cent of whom had sought and been refused appointments because of plaintiff's inability to serve them. There was detailed evidence as to the amount of money spent in the process of moving to the new location, the installation of fixtures, the building of partitions, painting the shop and otherwise preparing it for occupancy. There was also evidence as to the value of plaintiff's equipment as a part of an operating business and its value when detached therefrom and sold piecemeal, as well as evidence of the losses sustained in the sale of the equipment. Nothing was allowed plaintiff in the way of damages for loss of anticipated profits. Plaintiff lost her business, and equipment which had cost her in excess of $2,000 brought, on forced sale, only $650. These facts furnished a good basis for the allowance of damages. The award as to defendant Goldstein was fully sustained by the evidence and was reasonable.

█ As we have indicated, we think the judgment against appellant as surety was excessive and we reach this conclusion because we think it should have been limited to the penalty of the bond given upon issuance of the temporary injunction, namely, $1,000. It is appellant's contention that the $500 bond was entirely ineffectual because it in terms referred to a restraining order that was about to be issued and not to one that had been previously issued, and because no restraining order was issued in connection with the giving of the bond. Reliance is placed upon *Carter* v. *Mulrein*, (1889) 82 Cal. 167 [22 P. 1086, 16 Am.St.Rep. 98], but that

case is not in point. ▮ The bond was ordered to be given as a condition to the continuance in force of the restraining order, and *Lambert* v. *Haskell,* (1889) 80 Cal. 611, 617 [22 P. 327], is direct authority for the proposition that the order continuing the restraining order in force was the equivalent of an original order. The point is not decisive, however, because we have concluded that no recovery should have been allowed upon this bond under the evidence and the findings as to damage.

▮ The temporary restraining order was issued February 20, 1941, without the requirement of a bond; it was served on that day. On the return day, February 28, the hearing was continued until March 5 on which date demurrers were sustained with five days to amend, the hearing was continued to March 12, and the temporary restraining order was continued in force, upon condition that a $500 bond be given by 5 p.m. of March 5, which was done. On March 12 the temporary injunction was issued with bond of $1,000 and it remained in force until the action was dismissed on March 21. The $500 bond provided in part as follows: "WHEREAS, the above named Plaintiff has commenced, or is about to commence, an action in the Superior Court of the County of Los Angeles, State of California, against the above named Defendants and is about to apply for A Temporary Restraining Order in the said action against the said Defendants enjoining and restraining Them from the commission of certain acts, as in the Complaint filed in the said action is more particularly set forth and described. NOW, THEREFORE, in consideration of the premises, and of the issuing of the said Temporary Restraining Order, the NATIONAL AUTOMOBILE INSURANCE COMPANY," etc. [here follow the usual provisions of an injunction bond]. The finding was that plaintiff sustained damage by reason of the restraining order *and* the preliminary injunction. Obviously the finding must be understood as implying that plaintiff sustained some damage by reason of the restraining order, since the judgment exceeds by $107 the penalty of the bond given upon issuance of the temporary injunction. There was no evidence that any of the damages awarded plaintiff accrued during the time when the restraining order alone was in force, February 20 to March 12, nor was there any finding that any damage accrued during that period. Plaintiff did not give up the business until after March 21 and since she was not

claiming damages for loss of profits in the meantime, her entire damage was sustained by reason of her liquidation of the business. There was evidence from which the court could have found, and inferentially did find, that the enforced closing of the business for an entire month was so disastrous to plaintiff's prospects of regaining her patronage and reestablishing the business as to warrant her in liquidating the same, and for that reason we believe that the judgment should stand as to the entire penalty of the bond given upon the issuance of the temporary injunction. But we can find no basis upon which to impose liability upon the surety by reason of the bond given to continue the restraining order in force between March 5 and March 12. On the latter date responsibility shifted from that bond to the bond on the temporary injunction. The restraining order was in force for 13 days before any bond was given and for 7 days thereafter. For the purpose of measuring the obligation of the surety the restraining order must be deemed to have been issued on March 5, although the order of that date only continued it in force. (*Lambert* v. *Haskell, supra,* (1889) 80 Cal. 611, 617 [22 P. 327].)

In furnishing the bond the surety did not assume liability for damages which had been theretofore suffered. The bond was not given to comply with any requirement made at the time of the issuance of the restraining order, because no bond had been required. Bonds given to indemnify against damage which may result from injunctive process are to be construed as operating prospectively unless they are so worded as to express an intention of the surety to assume liability for damage which has accrued before the giving of the bond. (*Carter* v. *Mulrein, supra,* (1889) 82 Cal. 167 [22 P. 1086, 16 Am.St.Rep. 98] ; *Curtiss* v. *Bachman,* (1895) 110 Cal. 433 [42 P. 910, 52 Am.St.Rep. 111] ; *Alaska Improvement Co.* v. *Hirsch,* (1897) 110 Cal. 249, 251 [47 P. 124, 51 P. 340].) If, therefore, the closing of the business between February 20 and March 12 contributed to the total damage sustained by plaintiff it is impossible for us to tell from the record, and we are inclined to believe that it would have been difficult, if not impossible, for the trial court to determine how much of the damage was sustained before and how much after the bond on the restraining order was given. As that may be, the court did not attempt to do so. There is therefore no basis in the evidence nor in the findings for

even an approximation of the amount of damage, if any, which plaintiff sustained while the restraining order was in force, either before or after the $500 bond was given. Plaintiff testified that she had no intention of giving up her business until after the 21st of March, when she for the first time realized that it would be hopeless to continue with it. The enforced abandonment of the business was the cause of her damage, and the evidence sufficiently shows that the decisive factor was the prolonged restraint which plaintiff was under by reason of the temporary injunction. The facts in this connection call to mind the adage that "It is the last straw that breaks the camel's back." Apparently that is what happened to plaintiff's business; it might have survived being closed one, two or three weeks, but not the fourth. So far as liability is concerned, the bonds must be regarded as creating separate obligations as if they had been given by different sureties. The effect of the restraining order upon the final result while the first bond was in force is too uncertain and remote under the evidence to furnish a basis of liability of the surety.

For the reasons we have stated, the judgment should be reduced to the amount of the penalty of the injunction bond, namely, $1,000. We think a judgment in this amount is a satisfactory result to be reached from a consideration of the rather difficult and intangible facts of the case.

The judgment is modified by reducing the same from $1,107 to $1,000, and as so modified is affirmed, neither side to recover costs on appeal.

Desmond, P. J., and Bishop, J. pro tem., concurred.

Reporter's note: On February 10, 1943, the opinion and judgment were modified to read as above.