[Civ. No. 20277. First Dist., Div. One. Dec. 19, 1962.]

JOHN F. P. BYRNE et al., Plaintiffs and Appellants, v. JAMES W. HARVEY, Defendant and Respondent.

96

Gerald J. O'Gara, James A. O'Gara and O'Gara & O'Gara for Plaintiffs and Appellants.

Frank S. McGorty and Dorothy E. Handy for Defendant and Respondent.

SULLIVAN, J.—Plaintiffs appeal from a judgment of dismissal entered after the sustaining without leave to amend of a demurrer to their second amended complaint.

The genesis of the present dispute is found among certain competing claims to a portion of the remainder of a trust created under the terms of the will of one Anne McNally Liddle. According to such will which was admitted to probate, the testatrix created a trust in 1,000 shares of the capital stock of California Portland Cement Company for the benefit of her sister Florence McNally during the latter's lifetime with the direction that upon the death of such beneficiary, the trustees, *inter alia*, should distribute 150 shares of the remainder to Edward I. Coffey, a San Francisco attorney. Both Mr. Coffey and his wife Kathleen Ann Coffey predeceased Florence McNally and, upon the death of the last named

person and the termination of her trust, a question arose as to whom Mr. Coffey's share of the remainder should go. Among the rival claimants were James W. Harvey as administrator of Mr. Coffey's estate, the same person as administrator of Mrs. Coffey's estate, eight second cousins of Mr. Coffey referred to in this record as the "Byrne claimants" and three sisters and the estate of a deceased brother of Mrs. Coffey, referred to as the "Keating claimants." While such claims were pending, the Byrne claimants, who are the plaintiffs herein, acting through their attorneys O'Gara and O'Gara, and Mr. Harvey as administrator of each of the estates of Coffey entered into an agreement concerning their respective claims to Mr. Coffey's above share of the Liddle trust. It is this agreement which is the foundation of the action now before us.

We have alluded to the foregoing matters solely to place the issues of this appeal in their proper perspective. As we shall point out, much of what we have just said and other considerations to be hereafter mentioned, are properly cognizable herein as subjects of judicial notice. Preliminarily we observe that in our determination of the questions presented herein, we may judicially notice within the limits and for the purpose hereinafter explained, certain pertinent parts of the following: the probate proceedings had upon the administration of the Estate of Edward I. Coffey, Deceased (No. 94205) and of the Estate of Kathleen Ann Coffey, alias, Deceased (No. 130814) in the Superior Court of the City and County of San Francisco; the proceedings and opinion in the First District Court of Appeal in the case of *Estate of Coffey* (1958) 161 Cal.App.2d 259 [326 P.2d 511]; and the proceedings and opinion in the Second District Court of Appeal in the *Estate of Liddle* (1958) 162 Cal.App.2d 7 [328 P.2d 35].

Before discussing the problems at hand, we set forth a short chronology: On *October 11, 1942,* Anne McNally Liddle died. Proceedings on the administration of her estate and testamentary trusts were had in the Pasadena Department of the Superior Court of Los Angeles County. The parties herein have referred to such forum as the "Pasadena Court"; to avoid confusion we will do the same. On *June 20, 1943,* Edward I. Coffey died; on *July 27, 1947,* his wife Kathleen died. Both died intestate and, as we have indicated above, probate proceedings pertaining to the estates of both of them were had in the Superior Court of the City and County of San Francisco. On *April 4, 1953,* Florence McNally, the

primary beneficiary of the Liddle trust, died. On *March 28, 1955,* the above-mentioned agreement of the Byrne claimants and Mr. Harvey was entered into. On *May 31, 1955,* the probate court in San Francisco made a certain "Order Authorizing Compromise of Claims" in both Coffey estates relating to the above agreement of March 28, 1955. On *June 3, 1955,* certain proceedings were had in the Pasadena court in connection with the Liddle trust relating of the same agreement. On *March 21, 1956,* the San Francisco probate court made a further order of "Instructions to Administrator" relating to the above agreement and the Liddle trust property. On *June 11, 1958,* the decision in the *Estate of Coffey, supra,* 161 Cal. App.2d 259, was filed in the First District Court of Appeal. On *July 7, 1958,* the decision in the *Estate of Liddle, supra,* 162 Cal.App.2d 7, was filed in the Second District Court of Appeal. On *October 16, 1958,* the original complaint herein was filed.

With these preliminary observations, we take up the issues raised by the instant appeal. The original complaint, filed as we have stated on October 16, 1958, was entitled "Complaint To Quiet Title and For Damages For Breach of Contract." In it, the plaintiffs (Byrne claimants) named as defendants James W. Harvey, individually and as administrator of the Estate of Kathleen Ann Coffey, deceased; James W. Harvey, individually and as administrator of the Estate of Edward I. Coffey, deceased; and Richard J. Burke and Robert M. Lawson, trustees under the will of Anne McNally Liddle, deceased. On May 24, 1960, plaintiffs filed their first amended complaint *as of course,* entitled "First Amended Complaint For Damages For Breach of Contract," naming as defendants only Mr. Harvey in the above individual and representative capacities, and omitting the Liddle trustees.[1] A dismissal without prejudice was filed in respect to such trustees on the same day. On December 14, 1960, defendants' demurrer to the above first amended complaint was sustained with leave to amend.

On February 1, 1961, plaintiffs filed their "Second Amended Complaint For Damages For Breach of Contract" against "the defendant James W. Harvey, individually."[2] It contains in substance the following allegations: that plaintiffs

---

[1]Apparently no service of the original complaint was made during the interim of 19 months.

[2]The defendant Harvey, in his individual capacity and in his capacity as administrator of each of the Coffey estates thereupon filed a demurrer, a "Notice of Motion to Strike . . ." and a "Notice of Motion To Dismiss Action." After the hearing of all three but before its ruling

are heirs of Edward I. Coffey and claimants to his share in the Liddle trust; that Edward I. Coffey died intestate on June 20, 1943, and that the defendant James W. Harvey was appointed administrator of his estate; that Coffey left surviving him his wife Kathleen; that Kathleen Coffey died intestate on July 27, 1947, and that Harvey was appointed administrator of her estate; that Anne McNally Liddle died on October 11, 1942, and that under the terms of her will, thereafter admitted to probate, certain shares of California Portland Cement stock were to be held in trust for her sister Florence McNally and on the latter's death "150 of said shares, together with other cash securities and properties of the value of about $275,219.32 should be delivered to the heirs of Edward I. Coffey, deceased"; that Florence McNally died on April 4, 1953, and thereupon such stock, securities and property "became available for distribution" to such heirs; and that plaintiffs and the defendant Harvey as administrator of both Coffey estates thereupon made their respective claims for such stock, securities and properties.

It is further alleged: that plaintiffs, through their attorneys, "entered into a written agreement of compromise with the defendants James W. Harvey, as administrator . . . [of both estates] whereby among other things said defendants James W. Harvey acting as administrator of both said estates agreed in consideration of the sum of $20,000 thereafter to be paid to him from the said Liddle trust fund to dismiss their petition filed by them in the Liddle Estate in which they claimed adversely to these plaintiffs to be entitled to the trust funds created by the said Anne McNally Liddle"; "[t]hat said agreement was in writing and duly signed by defendants James W. Harvey, individually and as administrator" of both estates and by plaintiffs' attorneys and "that a true copy of said agreement is attached hereto marked Exhibit A and

on the demurrer, the court made its "Order of Dismissal As To Administrators" by the terms of which it ordered the action dismissed "as to defendants, James W. Harvey as Administrator of the Estate of Edward I. Coffey, deceased, and James W. Harvey as Administrator of the Estate of Kathleen Ann Coffey, deceased." Plaintiffs acquiesced in such dismissal. Despite the foregoing, the subsequent judgment of dismissal was in favor of the defendants necessarily including Mr. Harvey in all of his various capacities and plaintiffs' notice of appeal effectuated an appeal from the judgment in favor of Mr. Harvey in his representative as well as his individual capacity. The appeal from the judgment in favor of such defendant in his capacity as administrator was dismissed by this court on April 24, 1962. The sole respondent herein is James W. Harvey in his individual capacity.

made a part hereof by reference with like effect as if fully set forth.''

The second amended complaint further alleges: that ''despite the said agreement and contrary to the terms thereof'' the defendant on behalf of both estates claims an interest in the securities adverse to plaintiffs and for other heirs of Mr. and Mrs. Coffey and that defendants' claim ''is without any right whatever''; that ''plaintiffs have, at all times, done and performed all of the stipulations, conditions and agreements stated in said contract to be performed on their part at the time and in the manner therein specified, and/or have at all times been ready and willing and able to perform the same, and have tendered performance thereof''; that ''the said defendant James W. Harvey has failed and refused and still fails and refuses to perform the said contract on his side, and refuses to deliver to these plaintiffs said securities of the value of $275,219.32 less the sum of $20,000 agreed to be paid by these plaintiffs to said James W. Harvey''; and that plaintiffs have been damaged in the sum of $255,219.32. Plaintiffs' prayer is for judgment against Mr. Harvey *individually* in the above amount and for costs.

The Exhibit A referred to is a letter from plaintiffs' attorneys to Mr. Harvey which, after referring to the desire of both parties to determine and reach some agreement concerning their interest in the Liddle estate,[3] continues as follows: ''In view of the foregoing, you agree to dismiss your Pasadena petition, *after the following conditions are met,* upon the payment to you of the sum of $20,000 from Liddle Estate assets in full extinguishment of all claims. We agree that such payment should be made to you. *This paragraph is subject to the following conditions*:

---

[3]The first four paragraphs of the letter read: ''This is written in pursuance of your letter of March 25, suggesting two amendments to our letter of March 7.

''This letter is written with a view to making a formal agreement with you with respect to your petition against the Liddle Estate and with respect to our petition filed on behalf of John F. P. Byrne, et al., in the same estate proceeding.

''We both desire to expeditiously determine our relative interests in this estate thereby avoiding delay, expense, and the uncertainties of an appeal, let alone the uncertainties, because of the general state of the law, in the trial court.

''We know you have made some investigation and are familiar to some extent with the assets of the Liddle estate and we feel, too, that you are quite familiar with the laws of California regarding situations such as prevail in the Liddle Estate with particular reference to interpretation of the will and the law as it concerns a determination of who are entitled to receive the trust assets herein.''

"1. You will obtain court approval without delay of the compromise in the estates of Edward I. Coffey and Kathleen Ann Coffey.

"2. Pasadena Court approval of the compromise in the Liddle Estate.

"3. The compromise in the Liddle Estate will be effectual as to the eight persons that we represent, namely, the rightful heirs of Edward I. Coffey, under the Liddle will. This agreement shall be of no force and effect should other qualifying heirs refuse to enter into this agreement or proposed compromise prior to court approval thereof." (Emphasis added.)

After a statement of six additional conditions, certain acts to be performed by plaintiffs' attorneys and certain matters bearing upon the completeness and construction of the agreement,[4] the letter concludes with the following two sentences: *"This agreement shall be without prejudice to either party, in the event court approval is not obtained to the agreed compromise.*

"If you agree to the terms of this letter, please sign below, have Mr. McGorty sign, and return the carbon copy to us." (Emphasis added.)

---

[4] This portion of the letter reads: "4. You will give notice to all parties or persons so entitled by law.

"5. You will pay or settle the outstanding claims against the Edward I. Coffey Estate from said sum of $20,000.

"6. Said sum is to be allocated between the two Coffey Estates as the Court in San Francisco may order.

"7. You will not receive any compensation, nor will your attorney, Frank S. McGorty, from either the Coffey estates, nor the Liddle estate, except from the said sum.

"8. Appropriate releases, receipts and dismissals will be filed after approval by both parties to this agreement.

"9. You will furnish O'Gara and O'Gara with copies of all proposed petitions and decrees herein mentioned and furnish them with notice of all hearings.

"O'Gara and O'Gara, as attorneys in fact for John F. P. Byrne, and others, and as their attorneys in the Liddle Estate proceedings, will do the following:

"1. File, join in, or cooperate in the filing by the trustees of appropriate petitions to effectuate this agreement.

"2. Will execute or obtain, executed releases, receipts and dismissals as appropriate.

"3. Seek the cooperation of the court and other interested parties in securing appropriate decrees in all pending proceedings.

"It is intended that this agreement should contain all the factors involved so that we may achieve an early distribution.

"We both agree, we are sure, that each of us will execute any and other necessary documents to effectuate the spirit of this letter.

"This agreement shall not be construed by either party hereto as an admission that any allegations in their Pasadena petitions are untrue or doubtful, or that any allegations in adversary's petition are true. . . ."

It is signed by Mr. O'Gara, one of plaintiffs' counsel. Immediately below his signature appear the following words: "Agreed to and accepted this 28th day of March, 1955" with the signature of James W. Harvey "Administrator of the Estates of Edward I. Coffey and Kathleen Ann Coffey" and the signature of Mr. McGorty as attorney for the administrator.[5]

Defendants' demurrer asserts that the second amended complaint fails to state facts sufficient to constitute a cause of action and that it is uncertain, ambiguous and unintelligible in various particulars. The court sustained it without leave to amend, giving no reason for its action. While the specifications of the demurrer were made on behalf of the defendant in both individual and representative capacities, it is clear and the plaintiffs agree that we are concerned here only with the sufficiency of the complaint as against the defendant in his individual capacity (see footnote 2, ante). As pointed out above, the sole defendant now before us is Mr. Harvey, individually. Our task is to determine whether a cause of action is stated against him in such individual capacity. All future references are to the defendant in the singular.

The respective positions of the parties may be summarized as follows: Plaintiffs contend that the agreement, although not binding on the Coffey estates, is nevertheless binding on the defendant in his individual capacity, that the allegations of the defendant's deliberate nonperformance assert his breach, and that the pleading therefore sets forth facts sufficient to state a cause of action against him. The defendant, on the other hand, contends that the agreement by its terms does not impose a liability on him individually, that, even if it be so construed, it is a conditional agreement, and that the pleading fails to allege the occurrence of the conditions which give rise to his duty to perform. In support of these contentions the defendant urges that we take judicial notice of certain records and proceedings of the superior and appellate courts relevant to the instant matter. As we explain hereafter, we propose to do so.

---

[5]Attached to the letter of March 28, 1955, and part of Exhibit A is an endorsement dated May 5, 1955, which in general provides that the letter agreement shall inure to the benefit of six additional claimants represented by three other counsel, which claimants shall have all the rights in favor of, and all the obligations undertaken by the Byrne claimants. For convenience we refer to the above six claimants as the "O'Connell claimants." The record also discloses two separate similar endorsements dated December 16, 1955, one for twelve additional claimants (McCrohan claimants) and one for Margaret M. Coffey.

For the purpose of testing the question of law raised, a demurrer admits all material and issuable facts which are properly pleaded, however improbable they may be. (*Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Smith* v. *Madruga* (1961) 193 Cal.App.2d 543, 545-546 [14 Cal.Rptr. 389].) It is elementary that where, as in the instant case, a written instrument is the foundation of a cause of action, it may be pleaded *in haec verba* by attaching a copy as an exhibit and incorporating it by proper reference. (*Holly Sugar Corp.* v. *Johnson* (1941) 18 Cal.2d 218, 225 [115 P.2d 8].) In such event it becomes as much a part of the pleading as if incorporated bodily therein (*Meer* v. *Cerati* (1921) 53 Cal.App. 497, 501 [200 P. 501]), may be examined to ascertain the contract of the parties (*San Gabriel Valley Bank* v. *Lake View Town Co., et al.* (1906) 4 Cal.App. 630, 633 [89 P. 360]) and as Witkin states (2 Witkin, Cal. Procedure, p. 1177) "its recitals may serve as a substitute for direct allegations ordinarily essential to the pleading," citing *Lambert* v. *Haskell* (1889) 80 Cal. 611 [22 P. 327]. We propose to examine the letter-agreement attached to plaintiffs' pleading in the light of such principles.

At the outset it is obvious that the letter of March 28, 1955, was directed to and accepted by the defendant in his representative capacity as administrator of the estates of Mr. and Mrs. Coffey and covered various acts done and to be done by the defendant in such capacity. References to "your petition against the Liddle Estate" and "your Pasadena petition" in the second and fifth paragraphs mean the petition filed by the defendant as administrator claiming the remainder of the Liddle trust for the above two estates. The entire tenor of the agreement—the dismissal of the Pasadena petition, the approval of the compromise in both Coffey estates, the provision for the payment of outstanding claims against the estate of Edward I. Coffey, the allocation of the $20,000 between the two Coffey estates, the provision restricting payment of the compensation of the defendant and Mr. McGorty as attorney for the defendant as administrator—leaves no room for any doubt that the agreement in question was an agreement of the defendant solely in his representative capacity. Indeed, as we have already set forth above, the plaintiffs themselves allege that they entered into the agreement in question with the defendant "as *administrator* of the estates of Edward I. Coffey, deceased, and Kathleen Ann Coffey, deceased . . ." (emphasis added) and that "said defendants James W. Har-

vey acting *as administrator* of both said estates agreed . . . to dismiss *their* petition filed by them in the Liddle Estate. . . ." (Emphasis added.) Nowhere in the agreement is there any language or other indication that it deals with matters relating to the defendant in any other but his representative capacity. As urged by the defendant, it is proper for us to ignore plaintiffs' allegation that the agreement was "duly signed by . . . [the defendant] individually . . ." in accordance with the general rule stated in *Washer* v. *Bank of America* (1943) 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338] "that when a written instrument which is the foundation of a cause of action or defense is attached to a pleading as an exhibit and incorporated into it by proper reference, the court may, upon demurrer, examine the exhibit and treat the pleader's allegations of its legal effect as surplusage."[6] (Pp. 829-830.)

It is also obvious that the agreement is conditional. The paragraph providing for the crucial act to be performed by the defendant, namely, the dismissal of the "Pasadena petition" asserting his claims as administrator to the Liddle trust, requires such dismissal "after the following conditions are met," quite apart from the concurrent requirement of the payment of the consideration. In the same paragraph it is stated that "[t]his paragraph is subject to the following conditions," nine conditions being thereafter set forth. Finally, in its conclusion, the agreement recites that it will be without prejudice to either party "in the event court approval is not obtained to the agreed compromise." In our view this means the approval of the probate court and of the Pasadena court mentioned in paragraphs 1 and 2 of the conditions.

Despite the foregoing, the plaintiffs argue that they have stated a cause of action against the defendant individually since their pleading "alleges the contract, breach thereof and damages." They claim that the defendant's individual liability rests on the proposition that where an administrator makes an agreement without the consent of court it binds him personally, although it is not binding on the estate, citing a number of cases to which we refer below. We observe that the pleading contains no allegations dealing with the

---

[6]Witkin states that the rule permitting recitals in the incorporated instrument to serve as a substitute for essential allegations "has an important application *against the pleader*: The recitals, if contrary to allegations in the pleading, will be given precedence, and the pleader's inconsistent allegations as to the meaning and effect of an unambiguous document will be disregarded." (2 Witkin, Cal. Procedure, p. 1178, original emphasis.)

court approval of the agreement although, as we have noted, such approval is one of its conditions. Instead liability is asserted under an allegation of the defendant's breach compressed into the bare statement that he "has failed and refused, and still fails and refuses to perform the said contract on his side." It is clear that this allegation is itself conclusionary and lacking in particularity. (See 2 Witkin, Cal. Procedure, Pleading, § 260, p. 1236.)

It is well established that "as a general proposition the only obligations which an executor or administrator may create against an estate are those which are authorized by the will of decedent or by statute." (*Moss* v. *Boyle* (1941) 44 Cal. App.2d 410, 413 [112 P.2d 657]; *First Nat. Trust & Sav. Bank* v. *Industrial Acc. Com.* (1931) 213 Cal. 322, 325 [2 P.2d 347, 78 A.L.R. 1324]; *Sterrett* v. *Barker* (1897) 119 Cal. 492, 494 [51 P. 695].) The representative cannot, by virtue of his *general* powers as such, make any contract which will be binding upon the estate or create any liability against the deceased or the estate, even though such contract is made for the benefit of the estate and the executor or administrator is described therein in his representative capacity. (*First Nat. Trust & Sav. Bank.* v. *Industrial Acc. Com., supra.*) It is equally well established, as a necessary corollary to the foregoing propositions, that an executor or administrator, unless so authorized by the will of the decedent or by statute, is personally liable on the contracts made by him unless he shall "avoid personal liability by special agreement with the creditor for the latter to expect payment only from the estate." (*Moss* v. *Boyle, supra*; *Sterrett* v. *Barker, supra*; *First Nat. Trust & Sav. Bank* v. *Industrial Acc. Com., supra*; *Maxon* v. *Jones* (1900) 128 Cal. 77, 81 [60 P. 516].) However, although the executor or administrator is personally liable, he may be reimbursed out of the assets of the estate, if his expenditure is found to be a necessary one. (*First Nat. Trust & Sav. Bank* v. *Industrial Acc. Com., supra*; *Moss* v. *Boyle, supra.*)

In support of their proposition that the defendant is individually liable, the plaintiffs rely on the *Sterrett, Moss* and *Maxon* cases, *supra*, as well as on *Dwinelle* v. *Henriquez* (1851) 1 Cal. 387, *Lowrey* v. *Rego* (1944) 65 Cal.App.2d 16 [149 P.2d 706] and *Henderson* v. *Riggles* (1930) 110 Cal.App. 320 [294 P. 31]. It is not necessary to review these cases in detail. All of them affirm the nonresponsibility of the estate and the individual liability of the representative where the latter acts by virtue of his general powers and not under the authority of

the decedent's will or of statute.[7] (See generally 20 Cal.Jur. 2d, Executors and Administrators, §§ 275-277, pp. 446 et seq.)

In the case before us, however, the clear purpose and objective of the administrator's action in entering into the agreement was the compromise of a claim of the estates with the approval of the probate court. (Prob. Code, §§ 578, 718.5.) He was not purporting to act under his general powers without court approval. He was attempting to exercise his power to enter into a compromise only subject to and with the prior approval of court so that he would have, through the operation of the above statutes, additional protection from liability. (*Estate of Lucas* (1943) 23 Cal.2d 454, 463-465 [144 P.2d 340]; *Estate of Coffey* (1958) 161 Cal.App.2d 259, 264 [326 P.2d 511]; *Estate of Wilson* (1953) 116 Cal.App.2d 523, 531 [253 P.2d 1011]; 72 A.L.R.2d 191, 211-212; see generally 20 Cal.Jur.2d, Executors and Administrators, §§ 285-289, pp. 465-477.) As we construe the agreement, it was designed to bind the estates of Coffey if it was to be effectual at all.

 In testing the sufficiency of the pleading based on the agreement we may and will in the interest of justice take judicial notice of certain facts and matters in other related proceedings which, though unmentioned by the pleading, make it defective.

 Although in considering a demurrer, a court is usually bound to accept the truth of the allegations of the pleading to which it is directed, nevertheless, this rule may be modified where the court is apprised of facts which it may judicially notice. (*Hancock* v. *Burns* (1958) 158 Cal.App.2d 785, 789-790 [323 P.2d 456]; *Allen* v. *Superior Court* (1959) 171 Cal.App.2d 444, 449-450 [340 P.2d 1030]; *Wilson* v. *Loew's Inc.* (1956) 142 Cal.App.2d 183, 187-188 [298 P.2d 152]; *Pike* v. *Archibald* (1953) 118 Cal.App.2d 114, 116-117 [257 P.2d 480].) [ Witkin furnishes the following discerning statement of the rule and the reason behind it: "The great majority of the cases dealing with judicial notice and pleading hold that a complaint or other pleading good on its face is nevertheless subject to demurrer when facts not alleged but judicially noticed render it defective. The theory is that the pleader should not be allowed to by-pass a demurrer by suppressing facts which the court will judicially notice. The principle is that of *truthful pleading,* and is applied for the

---

[7]Thus the representative is personally liable for the employment of an attorney (*Dwinelle* v. *Henriquez, supra*), an accountant (*Henderson* v. *Riggles, supra*; *Moss* v. *Boyle, supra*), or a loan broker (*Maxon* v. *Jones, supra*).

same reason as in the similar situation of pleaded exhibits which contradict allegations.'' (2 Witkin, Cal. Procedure, Pleading, § 208, p. 1185; original emphasis.) ██ ''That matters judicially noticed may be considered in construing the pleadings is well settled.'' (*Contractor's Safety Assn.* v. *California Compensation Insurance Co.* (1957) 48 Cal.2d 71, 75 [307 P.2d 626].) While it is not clear from the record that the trial court took judicial notice of all the matters claimed by defendant, nevertheless we propose to examine the defendant's contentions in the light of other court proceedings urged upon us by defendant.[8] In this way we consider the second amended complaint ''to be implemented by the facts of which we take judicial notice'' (*Wilson* v. *Loew's Inc., supra,* 142 Cal.App. 2d at p. 187) for the purpose of determining whether such facts are in derogation of the pleading and render it defective.

The record before us discloses the following: that on May 31, 1955, approximately two months after the signing of the agreement in question, the San Francisco probate court made an ''Order Authorizing Compromise of Claims'' in proceedings in connection with the estates of Edward I. Coffey and Kathleen Ann Coffey; that such order was given upon the verified petition of the defendant herein as administrator and after a hearing at which the Byrne claimants, plaintiffs herein, appeared by their present counsel and the O'Connell claimants (see footnote 5 ante) appeared by their separate counsel; that the above order contains a finding that the Byrne claimants and the O'Connell claimants, through their respective counsel, agreed in writing with the defendant *as administrator* of both Coffey estates, subject to the order of said probate court to effect such compromise and, subject to the approval of the Pasadena court, to compromise all claims of the Coffey estates in the Liddle trust for the sum of $20,000; that such order authorized the defendant *as such administrator* to so compromise such claims ''subject to the approval of the Superior Court of the State of California, in and for the County of Los Angeles, in said Proceeding No. P-5073, entitled In the Matter of the Estate of Anne McNally Liddle, deceased. . . .''[9]

---

[8]The pertinent matters have either been included in the instant record or appear in the opinions of the *Estate of Coffey, supra,* 161 Cal.App.2d 259, and of the *Estate of Liddle, supra,* 162 Cal.App.2d 7.

[9]The defendant was further authorized ''to sign, execute and deliver such releases and other documents as may be required to accomplish said purpose and to consummate said compromise and settlement, with the trustees of said Liddle Trust Property, and with those persons that may

The record, as augmented,[10] shows that certain proceedings were thereafter had in the Pasadena court in the Estate of Liddle on June 3, 1955, three days after the San Francisco probate court made its order authorizing the compromise in question. At such time attorneys for the Liddle trust, the Byrne claimants and the O'Connell claimants, as well as Mr. Harvey personally, appeared before the court. The transcript of the proceedings which we have examined as incorporated in this record shows in substance the following: that counsel for the Liddle trust objected to the approval by the court of the compromise agreement on the ground that the Byrne and O'Connell claimants should first establish their right to the property; that the court was of the same general view; that the agreement was not in fact approved; and that at the conclusion of the hearing the court spoke in general terms about having counsel submit a conditional order.[11] The record before us however fails to disclose what the specific terms of such order were and whether or not it was ever submitted, signed or filed. On oral argument here, the parties conceded that no further efforts were made in the Pasadena court to secure that court's approval of the agreement, although subsequent to June 3,

---

be designed [*sic*] by Court order in said Superior Court Proceeding No. P-5073 as the beneficiaries of the testamentary trust created by the will of Anne McNally Liddle, deceased, and known as the Florence McNally Trust.''

[10]Certain proceedings in the Liddle estate are part of the record on appeal in this court in the *Estate of Coffey, supra,* 161 Cal.App.2d 259 (1 Civ. 17634). We ordered the record in the instant appeal augmented by the incorporation by reference of the record on appeal in 1 Civ. 17634, subject to the right of the parties to object to its being considered on the ground it is not material. We think that in the interest of justice it is material to determine whether facts are shown in derogation of the pleading now under review. Other Liddle estate proceedings are reflected in the opinion in *Estate of Liddle, supra,* 162 Cal.App.2d 7.

[11]Counsel for the trustees appeared apprehensive that ''maybe some other heirs will turn up.'' The court (addressing the defendant) said: ''I think the whole thing depends on whether or not these gentlemen, or either of them, can establish that their group of clients have an interest here which authorizes them to then make the compromise with you.'' After a discussion about a conditional order, the following colloquy occurred: ''MR. HARVEY: I think it would be better to have a new stipulation, under the circumstances. MR. JAMES O'GARA: If the Court please, the form of stipulation to be approved and made an order by the Court, will be after submitting it to counsel, is that right, your Honor? THE COURT: I think it should be in the record so that whoever does hear it—— MR. HARVEY: As I understand it, your feeling is that if the people they represent are determined to be entitled to any share of those funds, then $20,000 is to be first paid to me. THE COURT: That is right. If they don't establish it, then you still have your chance to try to get all of it.''

1955, as we have already observed, certain endorsements of other claimants were added to the agreement.

The record in the instant case discloses the following additional facts: that on March 21, 1956, in the estates of Edward I. Coffey and Kathleen Ann Coffey, the San Francisco probate court made a second order entitled "Instructions to Administrator"; that such order was made upon the petition of the defendant as administrator and after a hearing at which the Byrne claimants appeared by their present counsel and the Keating claimants, the O'Connell claimants and claimant Margaret Coffey appeared by their respective counsel; that, according to the recitals of such order, present counsel for the plaintiffs herein (Byrne claimants) filed a demurrer and objections to the above petition, and also presented to the probate court reporters' transcripts of certain proceedings before such court on the hearing of the petition to compromise claims on May 1955 and of the proceedings in the Pasadena court on June 3, 1955; that the court found that the proposed compromise authorized by it on May 31, 1955, had "not been effected or completed," that no determination had been made by the Pasadena court or any other court as to the persons entitled to the Liddle trust remainder, that the matter had been set for hearing before the Pasadena court on March 23, 1956, that more than nine and one-half months had elapsed since the court's last order and "because of the uncertainty of the rights" of the Byrne claimants and the O'Connell claimants, "the proposed compromise could not be completed," and that since the court's first order on May 31, 1955, "new and additional facts have arisen which indicate it is not now for the best interests of the two above-entitled Estates and the persons interested therein to effect the proposed compromise . . . but that it is for the best interests of the said Estates that the Administrator exercise all his rights under the law to . . . press the claims of said Estates to the Liddle Trust . . ."; that by the order of March 21, 1956, the administrator was thereupon instructed by the court "[t]hat the order of May 31, 1955, . . . neither enlarged nor abrogated the regular powers of the Administrator of the Estates, but merely afforded him additional protection from liability in the event he should effect the compromise," and that in view of the above stated finding, the administrator was instructed and authorized "to do whatever he, in his discretion, may determine to be to the best interests" of the Coffey estates in connection with the claims to the Liddle trust and authorized to prosecute his

petition in the Liddle estate ''without any restrictions whatsoever on his lawful and statutory powers as Administrator by reason of the order of . . . May 31, 1955, . . .''

Upon appeal taken from the above order of March 21, 1956, by plaintiffs herein and others, Division Two of this court, on June 11, 1958, in the *Estate of Coffey, supra,* 161 Cal.App.2d 259, held that the first order of May 31, 1955, authorizing the compromise, even though final, created no vested rights in favor of the Byrne claimants, plaintiffs herein, stating: ''We think that the order of March 21, 1956, was a proper one and should be affirmed. . . . The order of May 31, 1955, was based on Probate Code, sections 578 and 718.5. Under these sections, the probate court has power only to approve or authorize a compromise. The language of both of these sections is permissive. These statutes neither enlarge nor abrogate the common law power of the administrator to enter into compromise agreements but only afford additional protection from liability. (*Estate of Lucas, supra,* 23 Cal.2d 454, 464 and 465.) . . . The record of the hearing on June 3, 1955, clearly indicates that both sides understood the nature of the order of May 31, 1955. Appellants now maintain that the order created vested rights in their favor. It is clear that an order merely authorizing a compromise, even though final, cannot create vested rights. Rather, it would appear that no rights are created until the compromise agreement is executed. For the various reasons set forth in the petition for instructions, the compromise was never completed.'' (161 Cal.App.2d at pp. 264, 265.)

At this point we also take cognizance of the following subsequent developments as disclosed by the opinion of the Second District Court of Appeal filed on July 7, 1958, in the *Estate of Liddle* (162 Cal.App.2d 7 [328 P.2d 35]) : the petitions claiming the remainder of the Liddle trust which were filed by the Byrne claimants, Mr. Harvey for the Coffey estates and the Keating claimants (heirs of Mrs. Coffey) were heard together, after which the Pasadena court rendered its decree distributing the remainder to the Byrne claimants as the only heirs at law of Edward I. Coffey and therefore entitled to his share of the trust. Upon appeal, the District Court of Appeal held that this was error and that the sole heir at law of Mr. Coffey was his wife Kathleen. It was further held that Mrs. Coffey's share must go to Mr. Harvey, her administrator, subject to administration in her estate rather than directly to her heirs, the Keating claimants. (162 Cal.App.2d at pp. 20-21.) The court

also adverted to the compromise agreement between the Byrne claimants and Mr. Harvey but observed that ''[t]he matter should remain open so far as we are concerned'' (p. 22). However it is clear from such opinion that the Keating claimants ''did not join [in the agreement] . . . or consent thereto'' (p. 21). We have found no indication in the record before us that the Keating claimants ever signed, joined in, or consented to the agreement here in dispute.

The foregoing facts and circumstances vividly expose the defective character of the pleading before us. In their light we are no longer presented with the bare allegation, itself of dubious factual value, that the defendant failed and refused to perform on his side the agreement declared upon. In passing upon the sufficiency of the second amended complaint, we now take into consideration, among others, the following salient facts appearing above: that the defendant having entered into the agreement in question, subject to approval of the court by which he was appointed (as well as subject to other conditions not presently considered), obtained such approval by an order of May 31, 1955, pursuant to sections 578 and 718.5 of the Probate Code; that the compromise, so authorized, was never effected or completed; that upon findings detailed above to the general effect that the compromise was no longer for the best interests of the Coffey estates but that it was for their best interests to press the claims to the Liddle trust, the same court on March 21, 1956, among other things, authorized the defendant to prosecute such claims without restriction by reason of the first order; that, as decided in the *Estate of Coffey, supra,* 161 Cal.App.2d 259, these plaintiffs had no vested rights in the first order of May 31, 1955, and the second order of March 21, 1956, was a proper one; and that, as appears from the *Estate of Liddle, supra,* 162 Cal.App.2d 7, the defendant as administrator, in performance of his duties and presumably in accordance with the above instructions, pressed the claims of the Coffey estates to the Liddle trust and was successful in securing the property.

The net effect of the foregoing is that the probate court, having jurisdiction of the Coffey estates and supervision over the acts of their representative, vacated and withdrew its authorization of the compromise and instructed the defendant as administrator that he was authorized to press the claims of the estates against the Liddle trust. It is implicit that the court's approval of the agreement be predicated upon the ''best interest of the estate'' or the ''advantage'' thereof to

the estate. (Prob. Code, §§ 578, 718.5.) Although the probate court at first found that the compromise was for the best interests of the two estates, by its second order it found that it was no longer so. This the court clearly had the power to do and its second order has been determined to be proper. (*Estate of Coffey, supra,* 161 Cal.App.2d 259, 264.) These plaintiffs had no vested rights in the first order, thus in effect vacated (*Estate of Coffey, supra,* at p. 265). Under the above agreement the defendant, as administrator, proposed to compromise the claims of the estates only ''with the approval of the court'' (Prob. Code, §§ 578, 718.5). As a result of the second order of March 21, 1956, the compromise did not have such approval; indeed the court regarded it as not being for the best interests of the estate.

We therefore hold that where, as here, an administrator enters into an agreement to compromise a claim of the estate for which he acts, subject, among other conditions, to the approval of the court having jurisdiction thereof and such approval is at first given but before the compromise is effected and completed, later vacated and withdrawn by the court in the best interests of the estate involved, neither the estate nor the administrator individually, who acted in compliance with all pertinent orders of the court, is bound by the agreement.

We conclude that the pleading before us, when read and considered with the facts of which we have taken judicial notice, fails to state a cause of action against the defendant herein.

In addition we are of the opinion that the second amended complaint fails to state a cause of action on other grounds. As we have set forth earlier, the plaintiffs pleaded the performance of conditions precedent imposed on them in the permissible statutory manner (Code Civ. Proc., § 457)[12] followed by the allegations of the defendant's breach. The performance of all conditions which are precedent to the liability of a defendant must be alleged in some form, either generally or specially. (*Himmelman* v. *Danos* (1868) 35 Cal. 441, 447-448.) In actions upon contracts, the essential allegation of performance by the plaintiff of conditions precedent imposed on such party can be made under section 457 of the Code of Civil Procedure by stating ''generally that

---

[12]Plaintiffs allege generally that they performed all conditions on their part to be performed ''and/or'' have at all times been ready, willing and able to do so. In view of our conclusion herein, we treat this as a permissible allegation under Code Civ, Proc. § 457 despite its hybrid character,

the party duly performed all the conditions *on his part, . . .*"
(emphasis added). Obviously this statutory device is not em-
bracive of all possible applicable conditions to a contract.[13]
Witkin states: "If a condition precedent imposed by the con-
tract is an *act* to be performed by the plaintiff he may allege
such performance in general terms. . . . But if the condition is
an *event* which must happen before the *defendant's* duty of
performance accrues, a *specific allegation* of the happening of
the condition is a necessary part of the pleading of the defend-
ant's breach." (Witkin, Cal. Procedure, Pleading, § 261, p.
1237; original emphasis.) The above rule has found expression
in a number of cases holding that where the defendant's obliga-
tion or promise to pay money is conditional upon his ability
to pay (*Van Buskirk* v. *Kuhns* (1913) 164 Cal. 472, 476 [129
P. 587, Ann.Cas. 1914B 932, 44 L.A.R. N.S. 710]; *Rodgers* v.
*Byers* (1900) 127 Cal. 528, 531-532 [60 P. 42]) or upon the
existence of a fund from which payment is to be made
(*Mitchell* v. *Green* (1930) 110 Cal.App. 259, 264 [293 P. 879];
*Eddy* v. *Louis M. Hickman* (1933) 136 Cal.App. 103, 105 [28
P.2d 66]; *Rose* v. *Ames* (1942) 53 Cal.App.2d 583, 588 [128
P.2d 65]; *Draper* v. *Patterson* (1958) 156 Cal.App.2d 606,
608 [319 P.2d 694]), it is incumbent upon the plaintiff to
allege that the condition has been satisfied.

In *Henry* v. *City of Sacramento* (1897) 116 Cal. 628 [48 P.
728], a contract to supply the defendant city with water was
conditional on the discovery of water of agreed quality and
quantity within six months of the execution of the contract.
It was provided therein that within 60 days of the signing of
the contract, plaintiff's assignor, one Fish, was to begin in good
faith the necessary prospecting and investigation to determine
whether the agreed supply of water existed and to continue
the same with dispatch so that the determination could be
made within the six-month period. If such water could not be
thus developed, both parties were to be released from all
liability under the contract. In affirming a judgment entered
upon the sustaining of a demurrer to the complaint with leave
to amend after plaintiff declined to do so, the court said: "It

---

[13]This is pointed up by the following *caveat* in 1 Chadbourn, Grossman,
Van Alstyne, California Pleading, Civil Actions, p. 901: "Caution must
be exercised, however, in the use of the statutory permission to plead
performance in the words of a conclusion of law. It must be remembered
that many types of conditions precedent do not involve personal perform-
ance of an act by the plaintiff, and that in such cases, a general averment
that the plaintiff has duly performed all conditions on his part to be
performed is inadequate."

is quite clear that the contract and the covenants of the defendant were based on the possibility of Fish discovering and developing by means of said wells water for the supply of the city, of the quality and quantity before mentioned, within six months after the date of the contract. But it is nowhere averred in the complaint that Fish or his assigns ever discovered or developed water of said quality and quantity, or any water at all, and defendant was certainly not liable upon its covenants to do certain things after the development of such water, if such water was never discovered or developed. The complaint, to be sufficient to state a cause of action for damages against the defendant for not complying with said covenants, should have averred the conditions upon which said covenants rested. . . . Fish, however, did not undertake to find water in the quality or quantity specified in the contract. He merely promised to diligently search and prospect for water during the six months succeeding the date of the contract; and his failure to find such water during said period would be perfectly consistent with the averments of the complaint [alleging plaintiff and his assignors had performed all conditions on their part], and yet leave the defendant entirely free from the obligations of any covenants on its part stated in the contract. The complaint is perfectly consistent with the fact that Fish and his assigns utterly failed to find and produce the supply of water upon which all the covenants of the defendant rested; and the failure of plaintiff to allege the conditions upon which alone the promises of the defendant were to be effective renders the complaint radically insufficient to maintain the action for damages herein sought to be alleged. It seems quite likely that the defect in the complaint arose, not from a want of knowledge how to plead, but from a want of facts to be pleaded.'' (116 Cal. at pp. 630-631.)

It is defendant's position that the problem before us is governed by the above rule and that upon our taking judicial notice of certain related proceedings in this and other courts, it becomes evident that certain conditions and events prescribed by the agreement and indispensable to the accrual of defendant's duty to perform, never did occur.

It is plaintiffs' position, on the other hand, that the defendant was bound to perform all of the acts underlying the above conditions, thereby effectuating their occurrence and that by his failure to do so and his frustrating the occurrence of the conditions, he committed a breach. Plaintiffs argue that the problem confronting us is governed by the familiar rule that

a party to a contract cannot take advantage of his own act or omission to escape liability and that where such party prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability. (*Bewick* v. *Mecham* (1945) 26 Cal.2d 92, 99 [156 P.2d 757, 157 A.L.R. 1277]; *Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 371 [210 P.2d 757]; *Rains* v. *Arnett* (1961) 189 Cal.App.2d 337, 347-348 [11 Cal.Rptr. 299]; *Carl* v. *Eade* (1927) 81 Cal.App. 356, 358 [253 P. 750].)

We turn to conditions 2 and 3 of the agreement. By its terms the agreement is subject to "Pasadena Court approval of the compromise in the Liddle Estate." Through the operation of the concluding provision of the letter, the agreement "shall be without prejudice to either party" if the approval of the Pasadena court were not obtained. In plain language, this means that neither party is bound by the agreement if it is not so approved. Nowhere does the agreement by its terms impose on the defendant the duty of securing such approval.

On oral argument before us, counsel for the plaintiffs maintained that the agreement should nevertheless be interpreted as imposing such duty upon the defendant. As we have pointed out, the plaintiffs chose to plead the agreement *in haec verba* by attaching a copy and incorporating the same by proper reference, thereby adopting the recitals of the agreement as direct allegations. (See *Holly Sugar Corp.* v. *Johnson, supra,* 18 Cal.2d 218 and other authorities, *supra.)*

If the plaintiffs' position on the agreement was that the provision dealing with Pasadena court approval was ambiguous and should be interpreted as they now urge, then they should have put some definite construction upon it by appropriate averment. *(Lambert* v. *Haskell, supra,* 80 Cal. 611, 613; *Bates* v. *Daley's, Inc.* (1935) 5 Cal.App.2d 95, 101 [42 P.2d 706].) This they did not do. In our view, the agreement does not charge the defendant with the duty of obtaining Pasadena court approval. Even assuming for the sake of argument, but without conceding, that it may be ambiguous in the above respect, nevertheless the agreement was a letter prepared by plaintiffs' counsel and should therefore be interpreted most strongly against the plaintiffs. (Civ. Code, § 1654; *Miranda* v. *Miranda* (1947) 81 Cal.App.2d 61, 66 [183 P.2d 61].)

We are of the opinion that the approval of the agreement by the Pasadena court was therefore "an *event* which must

happen before the defendant's duty of performance accrues. . . ." (2 Witkin, Cal. Procedure, p. 1237, *supra*; original emphasis.) There is a complete absence of any allegation in the pleading before us that this event occurred.

The plaintiffs argued before us that the Pasadena court deferred its approval and was prepared to give a conditional approval but that the defendant, although accepting this situation, subsequently frustrated and "sabotaged" the agreement. The defendant on the other hand argues that these same proceedings show that no approval of the Pasadena court was ever obtained and that he was not responsible for such lack of it.

From the facts and matters pertaining to the Liddle estate which we have already noted, we are persuaded that the Pasadena court never approved the agreement of compromise and that even if the general tenor of its remarks on June 3, 1955, indicated a conditional approval, the condition which the court mentioned, namely that either the Byrne or O'Connel claimants first establish their right to the Liddle trust remainder before court approval never occured, since the Second District Court of Appeal in the *Estate of Liddle, supra*, held that none of these claimants had established their right to the property.

This leads us to a brief consideration of the third condition of the agreement, set forth at length above, and dealing with the signing of the agreement by other heirs. After reciting that the agreement shall be effectual as to the Byrne claimants, this provision states that the "agreement shall be of no force and effect should other qualifying heirs refuse to enter into this agreement or proposed compromise prior to court approval thereof." It is not indicated what is meant by "qualifying" heirs and the pleader has placed no construction whatsoever on such word or for that matter on any part of such clause, by appropriate averment. From the existence of endorsements for the O'Connell and McCrohan heirs and for Margaret Coffey, we think that the provision can be reasonably construed to mean other claimants similar to the above and having some colorable claim based on relationship to Mr. or Mrs. Coffey. It is clear to us that the Keating claimants, relatives of Mrs. Coffey, fall within this group and, as the opinion in the *Estate of Liddle, supra*, indicates, by prosecuting their claims to the Liddle trust independently and not signing, joining in or consenting to the agreement of compromise, these heirs declined and there-

fore refused to enter into the agreement. Thus the third condition of the agreement was unsatisfied. Here also is a complete absence of any allegation that no other qualifying heirs have refused to enter into the agreement. Although negative in form, it is essential to the plaintiffs' cause of action. *(Estate of Eskridge* (1942) 51 Cal.App.2d 634 [125 P.2d 527].)

■ Apart from our first conclusion as to the insufficiency of the second amended complaint and assuming *arguendo* that the defendant may be individually liable under the instant agreement, it nevertheless appears that the agreement imposes such liability only if the following conditions are met: first, that the agreement is approved by the Pasadena court; and, secondly, that no other qualifying heirs have refused to enter into it. It was incumbent upon the plaintiff to allege, in the first instance, that such approval was obtained, or allege a valid excuse for the lack of such approval; and in the second instance to allege that no such refusal took place, or allege a valid excuse for such refusal. *(Mitchell* v. *Green, supra,* 110 Cal.App. 259, 264; 2 Witkin, Cal. Procedure, p. 1237.) Such excuse might rest upon an appropriate averment that the approval in the one case was prevented, and the refusal, in the other, was caused, by the defendant. However, as we have pointed out, there is no allegation that such approval was obtained or so prevented from being obtained, and no allegation that no heirs refused to enter into the agreement or that such heirs were caused by the defendant to so refuse. Therefore, the second amended complaint failed to allege facts sufficient to state a cause of action for the above reasons also.

The above defects appear irreparable and fatal to the plaintiffs' cause when considered in the light of the facts and matters of which we have taken judicial notice above. These establish that there was eventually no approval of the San Francisco probate court, prior approval having been vacated by said court; that there was no Pasadena court approval or at the best a conditional approval which was dissolved by the decision in the *Estate of Liddle, supra,* 162 Cal.App.2d 7; and finally that other heirs, namely the Keating claimants, did not enter into the agreement here in question and asserted their claims independently under circumstances which at least on this record cannot be remotely charged to the defendant herein.

In our review of the pleading before us, it is not merely a matter of assuming that the plaintiffs have stated their case as strongly as it was possible for them to do. *(Faulkner* v. *California Toll Bridge Authority* (1953) 40 Cal.2d 317, 328 [253 P.2d 659].) Even here such an assumption acquires strength from the fact that the plaintiffs, after three attempts, have made no effort to incorporate the essential allegations above-mentioned and have retained in all pleadings the bare allegation of breach above-noted which is itself conclusionary and lacking in particularity. (2 Witkin, Cal. Procedure, Pleading, § 260, p. 1236.) This is a case where judicial notice invoked and applied as an instrument for testing the pleading shows that it is defective and that allegations essential to correct its defects cannot be made.

In view of the foregoing, there is no reasonable possibility that the second amended complaint can be amended to state a cause of action on the contract on which it is based. (See *Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 662, 664 [297 P.2d 638]; 2 Witkin, Cal. Procedure, Pleading, § 505, pp. 1496-1497.) Nor have the plaintiffs shown how their second amended complaint can be amended to state a cause of action on the agreement declared upon.

In view of our conclusion herein, we need not consider defendant's claim first made on oral argument that the agreement in question was void because against public policy.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 13, 1963.